Bazemore vs. Davis.

AMANDA BAZEMORE, plaintiff in error, vs. MARTHA DAVIS, defendant in error.

(This case was argued at the January term, 1875. The court, not being satisfied, ordered a reargument at the following July term, when it was decided.)

1. The judge may direct counsel to amend their pleadings, so as to charge the value of improvements mentioned therein; and it is not error of which the opposite party can complain.

2. Where discovery is waived, it is not improper, but altogether proper, for the judge to caution the jury not to regard defendant's answer as evidence, and this caution may be given whilst the answer is being read.

3. Concluding counsel cannot read or comment upon authorities which he does not read or produce to the opposite counsel in the opening.   Merely to name the books and pages from which he intends to read, is not sufficient; but the court can only deny him the privilege of using the authorities, and has no power to compel him to furnish the books to opposing counsel.   If the court agrees with concluding counsel on the law, and does not desire him to fortify his positions by authority, the judge may so state when the argument opens or afterwards.

4. It is not error for the court, in the presence and hearing of the jury, to call counsel's attention to a particular clause in one of the muniments of title in evidence, and ask them what they have to say why it should not be construed to have a certain legal effect adverse to the right claimed.

5. One of the rules of practice requires that counsel interrupting another for misstating the evidence, shall address himself to the court. When this rule is violated it is highly proper that the court should interpose peremptorily and put an end to the irregularity.   And, on such an occasion, it is not inappropriate for the court to observe to the jury, that when counsel differ as to the testimony, it is their function to decide from the testimony itself how the matter was.

6. A marriage settlement executed and recorded in 1842, was embraced in the act of December 30th, 1847, and had to be again recorded, in terms of that act, in order for the record to operate as notice : 32 Georgia Reports, 165.   The record of a settlement or trust deed is not constructive notice, except in relation to the property conveyed therein.   It is not, of itself, notice as to property purchased by the trustee with the proceeds of that property.

Bazemore *vs.* Davis.

7. A deed to a trustee, in trust for a woman and the heirs of her deceased husband, (there being but a single child,) conveys an estate in common for the benefit of the woman and child; and a purchaser from the trustee is charged, by such a deed, with notice of that kind of an estate only, and not with notice of an estate for life in the woman, with remainder to the child.

8. Although the mayor of Macon, in conveying certain advance fronts (formerly street or common,) could only convey the same to the owners of lots abutting thereon, yet, where one of such owners was a trustee holding by the above deed, for the use of the woman and child, as tenants in common, the mayor's deed would not necessarily vest a like estate in the trustee; but might, by express declaration of trust to that effect, convey an estate, in the advance front, for the woman's use during her life, with remainder for the use of the child.

(*a*) A subsequent conveyance, in fee, of both parcels of land, made by the trustee, and describing him as trustee of the woman only, without referring to the child or to the first deed, and without defining what estate he held in trust, but referring to the second deed as having been made to him " as trustee aforesaid," by the mayor, on the day of its date, passes to the purchaser no title to any of the child's patent interest in either parcel of land.

(*b*) This deed from the trustee to the purchaser under him, charges the purchaser with notice of the deed from the mayor to the trustee, and of all its terms, but notice of that deed is not notice that the woman had only an estate for life in the parcel of land covered by the other deed to the trustee, and that the remainder belonged to the child.

9. Where property is held in trust to the use and support, benefit and behoof, of a woman during her life, and to the maintenance and support of such children as she may bear, "and which shall form and remain to be her separate property and estate during her natural life, and then to such children as she may bear," the surplus income realized in her lifetime, over and above support for all the beneficiaries, belongs to her; and if mixed by the trustee with the proceeds of some of the *corpus* of the trust estate, and invested in lands, he taking title to himself, in trust for the woman and her only child, she will be the equitable owner, in fee, of such proportion of the land as the amount of income so invested bears to the whole investment.

10. If tenant in common improve the property while in possession and claiming to be sole owner, and with no permission or request from the co-tenant, the latter is not chargeable with the value of such improvements, beyond her share of the rents chargeable to the former.

11. If a trustee for two persons sell and convey the whole property, in fee, purporting to act as trustee for one only, and a part of the price, or the proceeds thereof, pass from the trustee to that one of the beneficiaries not named in the transaction, such beneficiary must refund the same, in equity, to the purchaser, or to those holding under him as subsequent purchasers, before being allowed to recover the whole of her interest in the trust estate so sold and conveyed; but a recovery may be had for such part as remains,

after deducting the amount received by the beneficiary, with interest thereon. In the application of this rule, it makes no difference that the beneficiary was not of full age when she received the money or its proceeds, provided the fund was secured by settlement upon her as a separate estate. She will, however, be chargeable only with such estate (for life or otherwise) as she actually took in the fund, and will not be responsible for any larger estate in it which her husband may have assumed and disposed of to other persons, unless she joined him in making such disposition after she arrived at majority.

12. If the trust property sold and conveyed by the trustee, as specified in the last preceding note, has since passed, by several parcels, into the hands of several separate purchasers, then, in accounting with any of such purchasers, the said beneficiary should bring back only so much of the proceeds with which she may be chargeable as will make the given purchaser's due *pro rata* proportion thereof, valuing each parcel, not in its present condition, but as it was when the trustee sold and conveyed the whole property. If the owners of all the parcels were before the court as parties, this basis of apportionment might be varied· to meet any special circumstances giving rise to peculiar equities.

13. A settlement by husband, shortly after marriage, in trust for the sole and separate use and benefit of the wife during her natural life, and at her death, to such child as should be born of her by the husband, free from any debts the husband should ever contract, with a reservation to himself of the right of using, at his discretion, the rents, issues and profits, without accountability, during the coverture, or during his life, if the wife should die first, leaving offspring of the marriage, and with a further declaration that in case of his survivorship, all of the property, with its increase, should vest absolutely in him, operated not only during the coverture existing at the time of executing the settlement and raising the trust, but during a subsequent coverture established by a second marriage between the same parties after a divorce *a vinculo matrimonii*.

14. Consequently, the second marriage, though occurring in 1865, was not attended with the attachment of fresh marital rights upon any of the property embraced in the settlement.

Practice in the Superior Court. Discovery. Argument of counsel. Marriage settlement. Registry. Notice. Trusts. Estates. Infant. Tenants in common. Improvements. Husband and wife. Divorce. Before Judge HILL. Bibb Superior Court. April Term, 1874.

On July 21st, 1842, William H. Disharoon executed a postnuptial settlement by which he conveyed to James S. Miller one hundred and fifty-two acres of land in Twiggs county,

Bazemore *vs.* Davis.

certain negro slaves and certain promissory notes, "together with the right, profits and rents, issues and increase, that may arise or accrue out of the aforesaid land and negroes," in trust for the use and support of his wife, Sarah Disharoon, during her natural life, and to the maintenance and support of such children as she may bear to him, the said William H. The deed further provided that said property should remain her separate estate during her natural life, then to such children as she might bear to the said William H., and not be subject to the payment of any subsequent debt which might be contracted by the said William H., nor subject to be sold or conveyed by him; but that the right and title to the same should be in said trustee subject to be used by the said William H. and the said Sarah during the continuance of the coverture, for their benefit and advantage, and for the purposes before mentioned. This deed was recorded on August 1st, 1842.

William H. Disharoon died leaving a widow and one daughter, Amanda, the defendant to this case. One Peyton Reynolds succeeded Miller as trustee under the aforesaid deed. At the April term, 1848, of Twiggs superior court, on the petition of Sarah Disharoon, by her trustee, an order was passed authorizing such trustee to sell at public or private sale, the land described in the aforesaid deed, " the proceeds to be invested in real estate as may seem most advantageous by said trustee." This land brought $400 00. To this sum was added a like amount of $400 00, alleged to have been saved from the income of the aforesaid trust property, after providing for the support of the beneficiaries. With the $800 00 thus raised, on February 8th, 1850, was purchased from Harvey Moseley, as trustee for Lucinda S. Barclay, all that portion of a lot of land known and distinguished as lot number six, in the southwestern range, according to the plan of the city of Macon, in Bibb county, containing two acres more or less. This conveyance did not follow the terms of the Disharoon deed, but was made to Peyton Reynolds, trustee of Sarah Disharoon and the heirs of William H. Disharoon.

On June 10th, 1851, the mayor and council of the city of Macon conveyed to Reynolds, trustee, all that piece of land "known as the advance front to lot number six, in the southwestern range," etc. The title to this advance front (a strip of land ten feet in width taken from the adjoining street) was vested in strict accord with the Disharoon deed. This deed was made under an act of the general assembly and an ordinance passed in pursuance thereof, authorizing such conveyances of street or common to the owners of land abutting thereon.

Sarah Disharoon having married one Henry B. Page, on December 10th, 1851, Reynolds, *as her trustee*, in consideration of $2,000 00, conveyed the aforesaid lot number six, with the advance front thereto, to one Job Taylor. This deed described the advance front as follows: "That portion or parcel of land known as the advance front to said lot number six, and deeded to the said Peyton Reynolds, trustee as aforesaid, by J. H. Washington, mayor of said city of Macon, on June 10th, 1851." To it was answered the following consent:

"GEORGIA—BIBB COUNTY.

"I, Sarah Page, hereby consent and agree to the making, executing and delivering the above and foregoing deed, freely, willingly, and of my own accord hereunto set my hand and seal, this tenth day of December, 1851.

    (Signed)      "SARAH $\underset{\text{mark.}}{\overset{\text{her}}{\times}}$ PAGE.   [L.S.].

"In presence of

   "BENJAMIN H RUTHERFORD,
   "KEELIN COOK, J. I. C.

"Recorded November 2d, 1853."

On October 8th, 1856, Charles H. Carden, as executor of Job Taylor, conveyed a portion of lot number six, with the advance front, to John Hollingsworth. Deed recorded May 2d, 1857. There was no reference in this conveyance either to the Disharoon trust deed or to the deed from Mosely, trustee, to Reynolds, trustee. In describing the property the advance front was referred to as follows: "Including the advance

front to said lot, deeded by the city of Macon to Peyton Reynolds, as trustee."

On June 23d, 1863, John Hollingsworth conveyed to Martha Satterfield " all that part of lot of land, situate and being in the city of Macon, and known as part of lot number six, in the southwestern range of the city of Macon, including the advance front to said lot, deeded by the city of Macon to Peyton Reynolds, trustee, the said part of said lot being eighty-two feet front on Oglethorpe street, and running back to back line of said lot one hundred and seventy-six feet, more or less."

This last description covers the property in controversy. From Satterfield, this portion of lot number six, with advance front, passed by successive conveyances, immaterial here, to complainant, Martha Davis, who purchased January 16th, 1865.

On October 26th, 1869, Amanda Bazemore brought actions of complaint against the various purchasers of the sub-divisions of the aforesaid lot number six, and amongst them, the complainant, for the recovery of said property. To the declaration against complainant was attached the following abstract of title:

"The above described property was purchased by Peyton Reynolds, acting as trustee, with the proceeds of a trust fund created by William H. Disharoon, for the use of Sarah Disharoon during her life, with remainder to plaintiff after the death of said Sarah. The said property was sold by said acting trustee without authority of law. The life tenant is dead, and plaintiff repudiates said sale."

In response to this action complainant filed her bill to perpetually enjoin the same. The main ground of equitable interference upon which she relied was that the proceeds of lot number six had been invested in a plantation in Houston county, and other property, of which the defendant had enjoyed the benefit. She set forth her paper title, and submitted that it was good even at law. She also alleged that valuable improvements had been made upon the property in

controversy since the sale made by Reynolds, trustee, all of which defendant was claiming in her action at law, together with *mesne* profits; that equity could more readily dispose of these matters than a court of law.

Defendant answered that by inadvertance or want of skill in the scrivener, the deed from Mosely, trustee, was made to Peyton Reynolds, trustee of Sarah Disharoon and the heirs of William H. Disharoon, instead of to the uses and trusts covered by the original trust deed from Disharoon to Miller; that in the conveyance to Taylor, and in the chain of title down to the present holders of said property, the deed from the mayor and council of the city of Macon is referred to, thus bringing full notice of defendant's rights to the purchasers. She admits that the Houston county plantation and a place near Macon were purchased by Reynolds, trustee, in part with the proceeds of the aforesaid lot number six, but denies that she ever ratified such sale. She recognizes no liability to account for any portion of the money received by Reynolds, trustee, from such sale, or for improvements placed thereon by the purchasers. Asserts that she never assented to their erection, and that they were not placed there on the faith of any act or word of hers. Alleges that complainant has placed no improvements on her lot since her purchase, and that as she has deeds, with warranty, from all those through whom her title descended, she is fully protected.

The 1st, 2d, 3d, and 5th points passed on by the court, will be sufficiently understood by reference to the head-notes bearing such numbers.

The 4th point arose as follows: After counsel for defendant had commenced his argument, and while in the midst thereof, after carefully inspecting the deed from Harvey Mosely, as trustee, to Peyton Reynolds, as trustee, of date February 28th, 1850, the court, of its own motion, remarked to defendant's counsel, in the hearing of the jury, as follows: "What have you to say why this clause, to-wit: 'To have and to hold the said lot of land, with all and singular the rights,

Bazemore vs. Davis.

members and appurtenances thereof whatever to the said Harvey Mosely, trustee as aforesaid, being, belonging, or in any wise appertaining, with the remainder and remainders, reversion and reversions, rents, issues and profits thereof to the only proper use, benefit and behoof of him, the said Peyton Reynolds, trustee, etc., as aforesaid, his heirs, executors, administrators and assigns in fee simple,' did not convey the legal title to Harvey Mosley in trust for Peyton Reynolds, and why it was that the words did not vest the whole title absolutely in Peyton Reynolds, and for what purpose the word 'administrators' was inserted after 'Peyton Reynolds' if not for that?"

6th. In reference to the deed embracing the post-nuptial settlement made by Disharoon executed in July, 1842, and recorded soon thereafter, it was contended by the complainant that not having been again recorded under the provisions of the act of December, 1847, such record did not operate as notice of its terms, etc., to any one, for any purpose. Also, that if not sustained in this, then such record constituted constructive notice only in relation to the property therein conveyed, and not in relation to purchases made by the trustee with the proceeds thereof. The court sustained both of these positions and so charged.

7th. It was contended on the part of the defendant that the deed from Mosely, trustee, to Reynolds, *as trustee for Sarah Disharoon and the heirs of William H. Disharoon,* was notice to Taylor, the purchaser from Reynolds *as trustee for Sarah Disharoon,* of an estate for life in the aforesaid Sarah, with remainder to her daughter, the only child of the said William H. The court charged that such deed vested the title in said Sarah and her said daughter jointly, as tenants in common, and that Taylor was charged with notice only of that trust.

8th. The defendant further insisted that as the deed from the mayor, etc., of Macon, vested the title to the advance front in Reynolds, as trustee for the said Sarah for life, with remainder to her daughter, the defendant, in the same manner as the property covered by the Disharoon marriage settlement

was conveyed; and that as the said Reynolds, as trustee *for said Sarah only*, conveyed the property embraced in the deed from Mosely, trustee, and in that from said mayor, etc., of Macon, to Job Taylor, without referring to the child or to the conveyance from Mosely, and without defining what estate he held in trust, but simply referring to the deed from said mayor, etc., as having been made to him " as trustee as aforesaid " on the day of its date, that no title to defendant's interest in either parcel of land passed. Also, that the reference to the deed from the mayor, etc, charged Taylor and those holding under him with notice of the terms thereof, and of the fact that said Sarah had only an estate for life in the land covered by the conveyance from Mosely, trustee, with remainder to the defendant.

Upon these positions the court charged the jury that, under the law, the mayor of the city of Macon could only convey the advance front of streets to the owners of the lots adjoining, and such deeds must follow the title to the adjoining lots; that, therefore, although the deed from said mayor to Peyton Reynolds, as trustee, covering the advance front, conveyed the use and proceeds to Sarah Page for her life, with remainder to defendant, yet, that neither Job Taylor, nor any other purchasers under him, were charged with notice of the trust stated in this deed, but that they had the legal right to presume that the Mosely deed to the adjoining lot stated the trust correctly.

9th. The complainant insisted that under the terms of the Disharoon marriage settlement the surplus income of the trust property, realized during the life of the wife, after providing for the support of the beneficiaries, belonged absolutely to her ; and that, as one half of the purchase money paid by Reynolds, trustee, to Mosely, trustee, for the aforesaid lot number six, came from surplus income, she, the life tenant, was the equitable owner, in fee, of one-half of said lot ; and that, as complainant held under a chain of title coming through her, under no circumstances could defendant recover

more than one-half of the property in controvery.   The court
so charged.

A condensed statement of the material portions of the tes-
timony introduced upon the trial, in addition to the deeds al-
ready set forth, presented the following case :

The defendant, Amanda Bazemore, is the only child of
William H. Disharoon; she was born in March, 1843; her
father died in 1847 or 1848; her mother afterwards married
Henry B. Page; defendant married Marcus D. Bazemore in
1853, when she was but a little over fourteen years of age ;
she was divorced from her husband in 1863, and re-married
him in October, 1865; her mother died in October, 1868.
Of the proceeds of lot number six, in the southwestern range
of the city of Macon, $1,200 00 was invested by Reynolds,
trustee, in a plantation in Houston county.  About this time
the trustee purchased a negro woman and two children, but
whether with a part of the proceeds of the aforesaid lot, or
not, the evidence leaves in some doubt.  A year or two after
the purchase of the Houston property, Mrs. Page became
dissatisfied, and the trustee, at her solicitation, bought a house
and lot near the city of Macon ; part of the purchase money
therefor was paid from the proceeds of the aforesaid lot num-
ber six, part from the funds of Mrs. Page, and part from the
sale of two negroes belonging to the trust estate.

The evidence is somewhat indefinite as to how the fund
paid for the lot near Macon was raised, but the above state-
ment seems most in harmony with all the testimony.

On October 27th, 1857, Marcus D. Bazemore executed a
post-nuptial settlement, wherein, having recited that whereas
one William H. Disharoon, shortly after his marriage, made
a settlement of all his property upon his wife for life, and at
her death, to the issue of such marriage ; and whereas, the
said Disharoon having died, his widow married one Henry
Page, and he (Bazemore) having married the only surviving
child, (the defendant,) and being willing to gratify her
mother's wishes in the premises, he, in consideration of love,
etc., for his said wife, and of a certain arrangement with his

mother-in-law, by which she was to loan to him a portion of such trust property, being expressed in a writing bearing same date with his deed, sold and conveyed unto Peyton Reynolds, all his title, etc., to the remainder interest of his wife in the plantation in Houston county, certain live stock and plantation tools, certain slaves, together with their increase, and all other property or interest therein that he may be entitled to, or to which he may become entitled by virtue of his marriage to his said wife, or by virtue of her father's said deed of gift, for the following uses and purposes: For the sole and separate use of his said wife during her natural life, and at her death to such child or children as shall be born to said Amanda and him, free from any debts he might thereafter contract. He reserved the right to use the rents, issues and profits of all of said property (increase of negroes not included,) without accountability during his coverture with his said wife; also, the right to consume the hogs and their increase, and such cattle as may vest in him under the aforesaid deed of gift or marriage settlement.

The instrument further provided that if his wife should die before him, leaving a child or children of the marriage, he was to have the right to use and spend the rents, issues and profits of said property during his life, without accountability, except as to the *corpus* and the natural increase of the negroes. Also, that in case he outlived his wife, then all of said property, with its increase of every description, should vest absolutely in him.

Reynolds accepted the trust.

Defendant testified, in brief, as follows: Knows that her mother moved to lot number six, in the city of Macon. There was then a good six-room dwelling-house and the necessary out-houses on the corner, and the lot was enclosed. She was then but seven or eight years old, and cannot remember much about the improvements. When this property was sold, did not know whether it was sold or rented. She was at the time absent at school. Knows that her mother and step-father moved to a place in Houston county, but is entirely unac-

quainted with the manner in which it was purchased, or what money paid for it. About the time she moved to Houston, two negroes were sold for about $1,250 00, but does not know what was done with the money. About the same time her mother bought a negro woman and two children for $1,200 00, but does not know what money was used in the payment for them. When she was not at school, prior to her marriage, she lived with her mother and step-father. After her marriage she lived with her husband. After her mother's death she and her husband took possession of the Houston place. Her husband sold this place, over her objections, for $1,350 00. She did not see the money paid, as she went out of the house to avoid it. After her husband received the money, he went off to Macon, and she did not see him for two weeks. He spent it all in the payment of debts contracted before his marriage. He also sold the place near Macon for $800 00. He spent this money with the exception of $25 00 or $30 00, which he let her have. (Though the evidence is silent on the subject, yet the answer admits that defendant joined in the conveyance of both of the above pieces of property, alleging as an excuse her infancy and the influence of her husband, which she was unable to resist.) Never knew of her right to lot number six until about twelve months before her mother's death. This information was derived from her mother and step-father. Knew nothing of improvements placed on the lot since her mother left it until after they were built. Knew nothing of the sale or purchase of the lot, or any part of it, to any one or by any one.

As to the improvements on the part of the lot in controversy in this case, the evidence disclosed that there were none at the time of the sale by Reynolds, trustee, to Job Taylor. John Hollingsworth placed improvements thereon to the value of about $1,200 00. The bare land would be worth about $700 00 or $800 00. Complainant, in the fall of 1865, placed a new two-room cottage on the lot, fenced it in, and made other improvements, which she claims cost her $500 00, but which, from other testimony, would be worth $300 00. She claims

that all of these improvements are of the aggregate value of $2,500 00, but other witnesses place them at $1,500 00. She asserts that she has annually placed improvements on the property to the amount of $40 00, and paid taxes to the amount of $25 00. The larger house, with out-house, since the war, would rent for from $20 00 to $30 00 per month. The two-room cottage would rent for about $6 00 per month. Complainant paid $1,200 00 for the property in Confederate money. The lot, with improvements, would not sell, at time of trial, for more than $1,500 00 in cash. The other portions of lot number six, not involved in this case, had passed into the hands of various purchasers, against whom suits had been brought, but who had not been made parties to this litigation.

10th. Returning to the remaining errors of law alleged to have been committed on the trial, which the above synopsis of the testimony will render clear, it was insisted by complainant that if the jury should believe, under the view of the law presented in the 9th division of this report, that the defendant was entitled to one-half the lot in dispute, they should ascertain what was the value of the improvements placed thereon since the purchase by Job Taylor, then ascertain the value of one-half the lot without the improvements, charge defendant's half with one-half the value of the improvements, less one-half the rents received by complainant, and that upon the payment of this charge defendant would be entitled to one-half the lot. That complainant was entitled to the improvements placed there by her or by those from whom she bought. The court so charged.

11th, 12th. It was contended by complainant that if the proceeds of lot number six had been invested in the Houston county plantation and in the house and lot near Macon, and this property had been settled by post-nuptial settlement on defendant, and afterwards sold by her husband, that defendant could not recover the lot in controversy until she had accounted for the same. That the fact that defendant was an infant at the time the settlement was made did not affect the principle, for if she was of sufficient age to enter into the contract

of marriage, she was old enough to contract as to a marriage settlement. In reply to this position, it was insisted: 1st, That the infancy of the defendant, at the time the settlement was made on her, would prevent the operation of the estoppel; 2d, that she could not be charged with the value of the entire estate in the property in which the proceeds of lot number six had been invested, because but a life estate therein had been conveyed to her; 3d, that if subject to account at all for the property embraced in the Bazemore marriage settlement, she is only liable for that proportion of the proceeds of the aforesaid property which the value of the lot in controversy bears to the present value of the whole of lot number six. That if complainant has omitted to show what that entire value is, then she has failed in a material portion of her case, and the jury, not having the requisite *data* before them, cannot find any charge as against defendant.

The court instructed the jury as contended for by complainant, and refused to charge to the contrary.

13th, 14th. In the argument before the supreme court, counsel for complainant contended that on the second marriage of defendant, the title to all the property which came to her as remainderman under the Disharoon settlement, vested absolutely in her husband, notwithstanding the post-nuptial settlement made by him prior to the divorce; and that if this position was correct, then the defendant had no title upon which to maintain the action of ejectment sought to be enjoined. The determination of this question appears in the last two head-notes.

The jury found for the complainant and directed that the defendant be perpetually enjoined. The defendant moved for a new trial upon the ground that the court erred in each of his rulings and charges, as above stated, and also because the verdict was contrary to the law and the evidence. The motion was overruled, and defendant excepted.

R. F. Lyon; A. O. Bacon, for plaintiff in error.

Lanier & Anderson, Hill & Harris, for defendant.

BLECKLEY, Judge.

1. It was not alleged that the matter of the amendment was improper, but only that the court should not have suggested it.

2. The caution to the jury was neither inappropriate nor ill-timed.

3. The judge stated to complainant's counsel that he did not wish them to argue the points of law, and would hear from the other side. The same points had once been argued before him on authority. Counsel for defendant insisted that complainant's counsel should furnish and read the authorities in the same manner as if they were to be used and commented on in conclusion. The judge declined to exact this, but said counsel for defendant might read any authority they thought proper.

4. The 4th head-note should be read in connection with the 4th point in the reporter's statement, which sets out what the judge said.

5. The interruption, as appears from the judge's notes in the record, was prohibited by denying to defendant's counsel the right to carry on a dispute with counsel addressing the jury. There seems to have been no appeal to the court to check any misrepresentation of the testimony. The judge called the interrupting counsel to order, and put an end to that method of interruption. He did not state to the jury which of the counsel was correct in representing the testimony, nor does it appear that he was requested to do so. What he said to the jury on the subject appears, substantially, in the head-note.

6. The 6th head-note upholds the charge of the court in reference to the record of the deed made by Disharoon. Even a proper record of that deed would not have been notice that its terms applied to property purchased with the proceeds of the property described therein, to a person ignorant of the fact that the proceeds had been so invested : 51 *Georgia Reports*, 296–7.

7. It seems that, in point of fact, the proceeds of the prop-

erty covered by the original trust deed made by Disharoon, were invested in that covered by the deed from Mosely to Reynolds, trustee; but the latter deed, instead of following the former in respect to the trusts declared, varied from it in this manner: The former declared an estate in trust for Mrs. Disharoon (afterwards Mrs. Page,) during her life, with remainder to her children, while the latter conveyed a fee simple estate in trust for Mrs. Disharoon and the heirs of Disharoon, her deceased husband. There is no doubt that heirs, here, meant children; and as there was but one child, namely, the daughter who afterwards married Bazemore, and is now the plaintiff in error, the mother and child were, under this deed, tenants in common. Such was the charge of the court.

8. The 8th head-note needs little or no expansion. By the terms "patent interest," as used therein, is meant any interest appearing on the face of the two deeds conveying to the trustee the property in dispute, each deed being read as applying alone to that part of the premises which it conveys. Thus, Mrs. Bazemore's *patent* interest under one of the deeds is a tenancy in common, and under the other a remainder, as is held in this and the next preceding head-note.

9. On the supposition that there was surplus income, and that it was invested, the property in which it was invested belonged, *pro tanto*, to Mrs. Page, absolutely; and the ninth head-note states fully the law of the case as to that point.

10. The ordinary rule as to improvements made by one holding possession *bona fide* against the true owner is stated in 2d Story's Equity, sections 1237, 1238, and *5th Georgia Reports,* 289. That rule seems to be that, neither at law nor in equity, in the absence of fraud or consent on the part of the owner, can the latter be forced to make compensation for the improvements. The exception recognized is, when he himself comes into equity and asks its aid to enforce his title; in which case, equity, in decreeing the relief, will require him to account for improvements. Notwithstanding the decided disapprobation expressed by Judge NISBET, in *5th Georgia*

*Reports, supra,* to restricting the exception within such narrow limits, we are not aware that any distinct enlargement of it has been established. As between tenants in common, where one has held out the other, ignorantly believing himself sole owner, and, pending such exclusion, has made permanent improvements, the co-tenant, unless he resorts to equity himself, cannot be compelled to contribute anything for the cost or value of the improvements, beyond such portion of the rents as may be chargeable to the party erecting them. This is the general rule of adjustment between improvements and *mesne* profits: Code, sections 2906, 3468; 9 *Georgia Reports,* 440; 39 *Ibid.,* 328; 47 *Ibid.,* 540.

11, 12. The head-notes eleven and twelve are so ample that it would be a waste of time and space to enlarge upon them.

13, 14. When Bazemore and wife were married the second time, the old law prevailed touching marital rights in the wife's property. It was prior to the reformation brought in by the act of 1866. On the second argument of the case before this court, the point was discussed as to the effect of the previous divorce and of that marriage on the property now in dispute. The position was assumed, that, as the first coverture was dissolved, the trust established by Bazemore in behalf of his wife, ceased as to the life estate to be enjoyed by her; that the estate became her own, divested of the trust; and that, upon the second marriage, it passed to her husband in virtue of his marital rights. What effect on this particular case such a transmigration of the title would have had, need not be considered. We think it clear that the trust adhered to the property and operated during the second coverture, just as it did during the first. The debts of the husband against which the property was to be protected, were *any* debts that he might contract, not simply those which might be contracted while a particular coverture subsisted; and the remainder to children was in behalf of any children she might bear by him. Both debts and children might come into existence after the first coverture terminated, and thus

the purposes of the trust were not necessarily accomplished when the parties were divorced. On the general subject, see the following cases, and the authorities therein cited: 11 *Georgia Reports,* 379; 12 *Ibid.,* 195; 14 *Ibid.,* 403; 15 *Ibid.,* 123; 3 Bac. Ab., 438.

Judgment reversed.