## SMITH *et al. v.* SMITH *et al.*

1. Where certain persons, as widow and children of a son of an intestate, filed an equitable proceeding against the other heirs, seeking to have an accounting and partition, and alleging that the intestate at his death was the owner of the south half of land lot 129 and the north half of lot of land 161 in a certain district and county; and where the defendants admitted that the intestate left the real estate described in the petition, except that the intestate owned not the south half of lot 129, but about 64 acres of the south of said lot, and also set up a certain contract in regard to the use of the property and the application of rents therefrom, and that the son of the intestate, under whom the plaintiffs claimed, had received personal property, for which an accounting should be had, and that one of the defendants had made permanent and valuable improvements on the land, a verdict which merely found "for the plaintiffs one-third undivided interest in the land owned by [the intestate], deceased," did not cover the issues in the case.

(a) Nor was this insufficient verdict cured by the entry of a judgment in favor of the plaintiffs for an undivided one-third interest "in land sued for, to wit: the north half of lot 161 and 64 acres off of south part of lot 129 set out in defendants' answer."

2. While a widow may bar a claim of dower by electing to take a child's part in lieu of dower within twelve months from the grant of letters testamentary or of administration on the husband's estate, yet where she and her children as heirs of her deceased husband brought an action for the partitioning of land, it could not be declared as matter of law that

she was not entitled to recover as a plaintiff, where it did not appear that she had ever applied for dower, and the evidence showed that there had been no administration on the estate of her deceased husband.

3. In an action for the partitioning of land, instituted by a widow and her children as the heirs of her husband, who died intestate, although it was not alleged that there had been no administration on the husband's estate, yet where evidence of that fact was introduced without objection, a recovery by the plaintiffs would not be set aside on the ground that the case was controlled by the decision in *Greenfield* v. *McIntyre,* 112 *Ga.* 691 (38 S. E. 44).

4. There can be no adverse possession by one tenant in common against his cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession. None of these things were shown in the present case.

5. Although charges may not be strictly accurate, yet if they are quite as favorable to the complaining party as he is entitled to, if not more favorable to him than should have been given, they do not furnish ·ground for a new trial at his instance.

6. The rule embodied in the Civil Code (1910), § 5671, as to when and to what extent a mere trespasser may set off a claim for valuable improvements against a recovery of mesne profits, was not applicable to the present case.

(a) Neither did the facts of this case make applicable the rule laid down in the Civil Code (1910), §§ 5587 et seq., dealing with cases where an action is brought for the recovery of land, and giving to a defendant, "who has bona fide possession of such land under adverse claim of title," the right to set off the value of improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims.

7. As a general rule, heirs can not in this State have an equitable accounting for personal property of their ancestor, even though there may be no administration.

(a) Special circumstances, such as collusion by the administrator with the other party, which might make an exceptional case, were not here involved.

8. Mesne profits and rents which one tenant in common may owe to another fall within the rule announced in the preceding headnote.

9. If one tenant in common receives more than his·share, he is liable to account to his cotenant for such surplus, and the statute of limitations does not commence to run in his favor, so as to bar an action of accounting·by his cotenant, until the tenant begins to hold such surplus · adversely to his cotenant and knowledge of that fact comes to the latter.

10. In an action by a widow and children of a decedent, claiming an interest under him in the estate of his deceased father, it was error to admit evidence that he always claimed an interest in the estate of his father and that he claimed a child's part in such estate, it not appearing whether any statements to that effect were made while he was in possession or were made·in the presence of other parties at interest.

11. In a controversy among persons claiming as heirs or those representing heirs of an intestate, where questions of an agreement to keep the land · together for a certain time for a specified purpose, of the statute of limitations, and of a claim for improvements made by one of the heirs

upon the property were involved, it was error to admit the testimony of a witness to the effect that the intestate requested that his land should remain just as it was until his wife's death, and should then be sold and divided. Such a request could have no testamentary effect, and it did not appear to whom it was made or that it had any effect upon the conduct of the parties.

APRIL 27, 1914.

Equitable petition. Before Judge Wright. Walker superior court. May 3, 1913.

Mrs. Archie Smith and several other plaintiffs, as heirs of J. A. Smith, deceased, filed their equitable petition against O. B. Smith and others, alleging substantially as follows: John M. Smith died intestate about the year 1881, leaving an estate consisting of both realty and personalty, and leaving his widow and five children, O. B. Smith, J. A. Smith, Scott Smith, Julia Smith, and Vashti Smith. No administration was had on his estate, and the widow and children for a time resided together on the property. The real estate consisted of the south half of lot of land number 129, and the north half of lot number 161 in the seventh district and fourth section of Walker county. In January, 1891, the widow died intestate, and Julia died intestate in 1898. The widow never remarried. Scott left the county and went to the west about the time of the death of his father, and nothing has been heard from him for fourteen or fifteen years. His whereabouts are unknown, and it is charged that he is deceased. J. A. Smith moved from the farm prior to the death of his mother, and has not since resided thereon. O. B. Smith, Julia Smith, and Vashti Smith remained on the farm, after the death of their mother, until September, 1898, when Julia died. They received the entire rents and profits up to that time. Since the death of Julia, O. B. Smith and Vashti have continuously lived upon the property and are still residing there, and have received the rents and profits up to the time of the filing of this suit. The rents and profits are alleged to be $100 per annum from the date of the death of the widow in 1891. J. A. Smith received nothing, and the plaintiffs, "his representatives," have received nothing. He died in July, 1910, intestate. At the time of the death of John M. Smith he was possessed of farming tools, wagons, household goods, and other personal property, which have been consumed largely by O. B. Smith and Vashti Smith. O. B. and Vashti sold timber from the lands during the years 1909

and 1910, amounting to $116, of which no part has been received by the plaintiffs. The probable market value of the land is $1,600. It can not be divided in kind. The plaintiffs pray, that the court "take charge of said estate and marshal its assets, and require said defendants to come in and account to complainants for their proportion of said estate;" that the property be sold, and, after accounting by the defendants and payment of the debts, that it be distributed as provided by law; that if necessary an auditor be appointed; and that they have general relief. A restraining order was also prayed to prevent the cutting of timber.

The defendants answered, in substance, as follows: John M. Smith died in 1880, leaving real estate and personalty of the value of about $800. There was no administration, and for a time the widow and children resided on the land. The real estate was as described in the petition, except that the intestate owned not the south half of lot No. 129, but about 64 acres off of the south of said lot. J. A. Smith received and consumed $219 worth of personal property which was left by John M. Smith at his death, $200 worth having been received more than twenty years ago, and $20 in 1898. Vashti received and held the balance of the personalty, and O. B. Smith received none of it. In 1909 and 1910, the defendants sold timber from the land amounting in value to $65. The value of the land is now $1,200. About 1880, after the death of John M. Smith, his widow, J. A. Smith, and O. B. Smith agreed among themselves to let the land remain as it was, and that O. B. Smith should pay certain debts of the intestate to others, cancel an indebtedness to himself, and pay the taxes, and that at the death of the widow he should be fully reimbursed for his outlay "out of said land," and should have an interest therein sufficient to compensate and reimburse him. The amounts paid by him were more than the value of all the shares in the land other than his own. He also made substantial improvements. In February, 1890, after the death of the widow, J. A. Smith and O. B. Smith ratified, recognized, and continued the contract formerly made, with the addition that O. B. Smith should take care of and support his two sisters. This he did, though the rents were insufficient for the purpose. The equitable right and title to the land was in O. B. Smith, and this was recognized and agreed to by J. A. Smith up to the time of his death; and since February, 1890, O. B. Smith has been in possession

of the land, claiming it under the contract and the facts above stated.   He has held adverse possession for more than twenty years.   He has made certain permanent and valuable improvements on the land, and he prays that "the rights of the parties be adjusted and fixed in accordance with the law in such cases."   The statute of limitations of four years was pleaded against any claim for rents and profits.

The plaintiffs amended their petition, denying the substantial allegations made by the defendants, and pleading the bar of the statute of limitations against the claim of O. B. Smith on account of the payment of debts of John M. Smith and on account of the alleged improvements.

The jury returned the following verdict: "We, the jury, find for the plaintiffs one-third undivided interest in the land owned by J. M. Smith, deceased."   The presiding judge entered on this a judgment in favor of the plaintiffs against the defendants "for one-third undivided interest in land sued for, to wit: the north one-half of lot 161 and 64 acres off of south part of lot 129 set out in def'ts' answer, and for $——— cost."   The defendants made a motion for a new trial, which was overruled, and they excepted.

*James E. Rosser* and *W. M. Henry,* for plaintiffs in error.
*W. H. Payne* and *R. M. W. Glenn,* contra.

LUMPKIN, J.   (After stating the foregoing facts.)

1.   From the preceding statement of facts it will appear that the proceeding was not an action of ejectment to recover an undivided one-third interest in land with mesne profits, but was an equitable action praying for an accounting in regard to an estate in which the plaintiffs claimed an interest, and a distribution thereof after payment of the debts.   It was alleged that the land could not be divided in kind, and there was a prayer that it should be sold, and that a proper decree should be entered.   The plaintiffs claimed to be interested in the estate to the extent of one third, by reason of being the widow and children of a son of the intestate, who had since died also intestate.   The defendants alleged that the real estate was as described in the petition of the plaintiffs (the south half of lot of land number 129 and the north half of lot number 161), except that the intestate owned not the south half of lot 129, but "about sixty-four acres off of the south of said lot," with no further description.   They also set up a contract in regard to

paying the debts of the intestate and taking care of the daughters of the intestate, for which reimbursement was to be made to the son of the intestate so agreeing, and also the making of certain improvements. The verdict merely found for the plaintiffs "one-third undivided interest in the lands owned by J. M. Smith, deceased." This did not cover the issues made by the pleadings, or the evidence. It did not declare what land was owned by the intestate, and this was not cured by the fact that the presiding judge entered judgment in favor of the plaintiffs for an undivided one-third interest "in land sued for, to wit: the north one-half of lot 161 and 64 acres off of south part of lot 129 set out in def'ts' answer." Neither the verdict nor the decree made any provision for partition or distribution by sale or otherwise, and, except by such implication as may be derived from silence on the subject, made no determination as to the matters of accounting claimed by the parties.

2. The plaintiffs were the widow and children of J. A. Smith, the son of the intestate whose estate was the subject-matter of the controversy. They claimed as heirs of J. A. Smith. It was contended that the widow is not in all events an heir of her husband who leaves children, and that it did not appear that she had elected to take a child's part instead of dower, so as to authorize her to recover. The statute declares that dower may be barred by an election to take a child's part in the realty, in lieu of dower, "within twelve months from the grant of letters testamentary or of administration on the husband's estate." *LaGrange Mills* v. *Kener*, 121 *Ga.* 429 (49 S. E. 300). The defect in the argument stated is that it does not appear either that there had been administration on the husband's estate or that she had applied for dower. By joining in this suit she elected to claim as an heir of her husband, and not as a dowress.

3. It was contended that the plaintiffs were not entitled to recover, under the ruling in *Greenfield* v. *McIntyre*, 112 *Ga.* 691 (38 S. E. 44). It was argued in the brief of counsel for plaintiffs in error that it must be alleged and proved that there was never any administration on the estate of J. A. Smith. It was not so alleged. But no point was made on the pleading, and evidence was introduced without objection to show that there had been no administration. A new trial would not be granted on that ground, were there no other reason for such grant.

4. The principal defendant testified, that, at the death of his father, the latter owed him $200, and also that the defendant paid a physician's bill, and certain other debts, and that he was "to be reimbursed out of the land" for such expenditures, and also for all improvements made by him. He further testified that there was no agreement with J. A. Smith about the latter's part of the estate, but that J. A. Smith got a horse, bridle and saddle, a gun, farming tools, two feather-beds and bed clothes, all of the value of about $218. He also said: "I never directly purchased my brother's, J. A. Smith's, interest in the farm. Am claiming that I am entitled to my interest in it as a brother of J. A. Smith, and as a son of John M. Smith. I want the payment of the debts and an equal division of the estate; and if J. A. Smith's wife and children are entitled [to] anything in the estate, on account of his share, I want them to have it." The son of this witness testified that he heard an agreement between his father and J. A. Smith, to the effect that the former was to take care of their mother and sisters, and to receive the rents of the place for their support. He also testified: "My grandfather was in debt some, and my father was to pay off his indebtedness," specifying certain items. Later he said: "A short time before J. A. Smith's death I had a conversation with him about these matters, there at my house. .He claimed that my father held enough against the place to take it. He did not then tell me anything about the agreement that my father should have an interest in the place, own the improvements, or pay for them. That was all agreed to before then, at the start, and was not discussed between me and him." It will thus be seen that while the evidence of the son conflicted with that of the father, and was more beneficial to the father than the latter claimed, neither of them made out any case of an agreement by which J. A. Smith sold or agreed for O. B. Smith to have his interest in the land, but at most that O. B. Smith was to receive the rents for the support of his sisters, and an admission that the father of the witness "held enough against the place to take it." This seems to contemplate that O. B. Smith might assert claims against the estate and subject the land, but does not amount to a contract to transfer title to him or a recognition of title in him.

There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice

of adverse possession. Civil Code (1910), § 3725. None of these things were shown. Omitting any question of administration, under the evidence the plaintiffs were the owners, by inheritance under J. A. Smith, of an undivided third interest in the land left by John M. Smith, as against the defendants; there was nothing which authorized a verdict otherwise, and a charge to that effect was not erroneous.

5. In an accounting, were the defendants entitled to any judgment against the plaintiffs or against their interest in the land? If there was an agreement between J. A. Smith and O. B. Smith by which the latter was to support their mother and sisters, and receive the rents for that purpose, so long as he carried out the contract he would be entitled to the rents, but not more, for that purpose. If O. B. Smith, without agreement on the part of J. A. Smith, held or took up debts against the estate of their father, and desired to subject the property of the estate, it was incumbent on him to proceed for that purpose within the time fixed by the statute of limitations applicable to such claims, or they would be barred.

When the presiding judge charged to the effect that if there was an agreement that O. B. Smith "was to be paid out of the land, or be paid out of the rents of the land, as the case may be, and you find that he did make such a contract, and that he did pay certain debts, and you can ascertain the amounts, and the value of the improvements, then I charge you, gentlemen, you will be authorized to offset such debts so paid under such contract against any mesne profits that the plaintiffs may be entitled to in the case," he committed no error harmful to the defendants, though the charge seemed to mingle improvements and debts, and stated an alternative contract. And likewise there was no error, as against the defendants, in the charge complained of in the fourth ground of the motion for a new trial.

6. This was not an action of ejectment against one holding land as a mere trespasser, and the rule as to the right of a trespasser to set off, against a claim for mesne profits, improvements which have increased the value of the premises, and the extent to which this may be done, embodied in the Civil Code (1910), § 5671, had no application to the case. Neither did the facts of this case make applicable the rule laid down in §§ 5587 et seq.,

which deal with cases where an action is brought for the recovery of land, and give to a defendant "who has bona fide possession of such land under adverse claim of title" the right to set off the value of improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims. O. B. Smith did not have an adverse claim of title against his cotenant until ouster, or exclusive possession after demand, or express notice of adverse possession; and, as we have seen, there was no evidence of any of these things, or of any contract which operated ·to transfer title from the plaintiffs to him.

7. As a general rule, heirs can not, in this State, have an equitable accounting for personal property of their ancestor, even though there may be no administration. Special circumstances, such as collusion by an administrator with the other party, which may make an exceptional case, are not involved here. *Carr* v. *Berry,* 116 *Ga.* 373 (42 S. E. 726), and citations; *Murphy* v. *Pound,* 12 *Ga.* 278; *Moughon* v. *Masterson,* 140 *Ga.* 699 (5), 704 (79 S. E. 561).

8. While the title to land descends by inheritance, subject to administration, mesne profits or rents which one tenant in common may owe to another are not realty, but are in the nature of a chose in action; and the fact that in partitioning proceedings, under certain circumstances, they may be declared to create a charge or equitable lien on the land set apart to the cotenant who owes them, does not change them into realty. Such a right to have an accounting does not pass to heirs by inheritance, but is enforceable by a legal representative alone. It falls within the rule laid down in the preceding paragraph of this decision. Hence, the plaintiffs were not entitled as heirs to an accounting for mesne profits prior to the death of J. A. Smith, under whom they claimed. The rule that in ejectment the land and mesne profits must be sued for in one action, and can not be sued for separately in this State (Civil Code (1910), §§ 5575, 5576), does not affect the decision above made.

9. Complaint was made that the court did not restrict the jury, in finding mesne profits,· to four years next preceding the bringing of the suit. This is the usual period of limitation where a claim to recover mesne profits is included in an action of ejectment, and the statute is pleaded; but even then the rule may not be absolute, where the defendant seeks to set off improvements made more than

four years before the institution of the suit. *Mills* v. *Geer,* 111 *Ga.* 276 (4), 294 (36 S. E. 673, 52 L. R. A. 934). In *Huff* v. *McDonald,* 22 *Ga.* 131 (68 Am. D. 487), it was held, that if one tenant in common receives more than his share, he is liable to his cotenant for such surplus, and the statute of limitations does not commence to run in his favor, so as to bar an action of account by the cotenant, until the tenant begins to hold such surplus adversely to his cotenant and knowledge of that fact comes to the latter. In that case one tenant in common brought an action against others, for an accounting for gold mined on the property, and for profits derived from it and from rentals received from other persons for the privilege of digging gold on the property.

In this part of the discussion we leave out of view the question whether in the present case there was any agreement as to the appropriation or use of rents for the support of the mother and sisters of O. B. Smith and J. A. Smith. If there was such an agreement and the rents or profits of the place were used by O. B. Smith for the agreed purpose, he would have no occasion to rely on the statute of limitations as to them.

We do not discuss the difference among the authorities as to the liability of a tenant in common to account for rents received from third persons. In *Huff* v. *McDonald,* supra, this court apparently takes position with one side of the conflicting authorities.

10. It was not proper to permit the widow of J. A. Smith to testify that he "claimed an interest always in the estate of John M. Smith," and that he "claimed all the while a child's part in the estate of J. M. Smith." Declarations of one in possession of land are sometimes admissible as tending to show the character of such possession. But broadly to admit statements of one in his own favor, regardless of whether he was then in possession or not, and of whether other parties interested were present or not, was error.

11. So likewise, it was error to admit the testimony of a witness to the effect that John M. Smith's "request was for it [the land] to remain just as it was until his wife's death, and then it was to be sold and divided." It did not appear to whom any such request was made, or that it had any connection with or effect on the parties to this case or the person under whom the plaintiffs claim. Standing alone, as a mere expression of a desire as to his property after his death, it could have no testamentary effect.

The pleadings and evidence do not make out a case of a tenant in common who, while recognizing such tenancy, in good faith erects permanent and valuable improvements for the purpose of honestly bettering the property and not to embarrass his cotenant or encumber the estate or hinder partition, so as to invoke, in a proceeding for equitable partition, the rule announced in *Smith* v. *Smith,* 133 *Ga.* 170 (65 S. E. 414), and *Helmken* v. *Meyer,* 138 *Ga.* 457 (75 S. E. 586, 45 L. R. A. (N. S.) 738). But this case is more analogous to *Bazemore* v. *Davis,* 55 *Ga.* 504 (10), 519.

　　　　　*Judgment reversed.　All the Justices concur.*