30404.   FOUNTAIN *v.* DAVIS.

DECIDED APRIL 6, 1944.

4

*W. L. Nix,* for plaintiff in error.

*Marvin Allison, Charles Pittard,* contra.

GARDNER, J. ■ The question for decision is whether or not the verdict, under the dispossessory-warrant proceedings,. can be sustained by the evidence. This is a summary proceeding and is ofttimes harsh in its application. It must be based upon the relation of landlord and tenant, and requires proof of the existence of such relation. Its purpose is to oust the tenant who holds wrongful possession against his landlord, and to deliver possession to the landlord. If the relation of landlord and tenant does not exist, the remedy is not available. In *Watson* v. *Toliver,* 103 *Ga.* 123 (29 S. E. 614), the Supreme Court said: "The relation of landlord and tenant is indispensable to the maintenance of the proceeding authorized by section 4813 of the Civil Code [Code of 1933, §§ 61-301, et seq.], for the summary eviction of a person as a tenant holding over; and therefore, where in the trial of such a proceeding it appeared that the relation of landlord and tenant did not exist between the plaintiff and the defendant, but that the latter entered upon the premises, not in subordination to, but under a claim of title adverse to the former, a nonsuit should have been awarded." To the same effect see *Story* v. *Epps,* 105 *Ga.* 504 (31 S. E. 109). In *Griffith* v. *Collins,* 116 *Ga.* 420, 422 (42 S. E. 743), the court said: "The law gives this remedy in no case in which the relation of landlord and tenant does not exist." There are many other decisions of the Supreme Court and of this court to the same effect. The right of possession is the only issue involved in a dispossessory-warrant proceeding. *Jordan* v. *Jordan,* 103 *Ga.* 482 (30 S. E. 265).

■ This brings us to inquire whether, under the facts as established by the evidence, the relation of landlord and tenant existed between the parties, or whether the relation was that of tenants in common. We are convinced that the relation was one of tenants in common. The Code, § 85-1001, reads as follows: "Wherever two or more persons, *from any cause,* are entitled to the possession, simultaneously, of any property, a tenancy in common is created. Tenants in common may have unequal shares; they will be held to be equal unless the contrary appears. The fact of inequality shall not give the person holding the greater interest any privileges, as to possession, superior to the person owning a lesser interest, as long

as the tenancy continues." (Italics ours.) It will be noted that the words of the statute are to the effect that, if from *any* cause the relation of tenants in common exists, each tenant is entitled to the possession of the property simultaneously with the other tenant, and that this right of possession exists between them whether or not their interests are equal. In no view of the evidence is it contended that I. N. Fountain entered into possession of the premises other than as an heir of his father, with the permission of his brothers and sisters and one of the heirs at law of J. C. Clack. He did not at any time claim that he was entitled to possession to the exclusion of the other heirs. He did not claim this at the trial, but steadfastly contended, without contradiction from either side, that he was an heir of his father, entitled to possession in common with his brothers and sisters of whatever interest his father had in the premises.

Just what was the interest of the father?. The court ruled against I. N. Fountain, and we think erroneously, on the theory that, since the purported conveyance of S. W. Fountain and the elder J. C. Clack from themselves as grantors to themselves and others as trustees, failed for lack of a sufficient description, they were never, and under the evidence could never become tenants in common upon a reversion of the property to them or to their successors in title. We do not think that this position is tenable. These two grantors, do doubt motivated by a community pride and the enjoyment and benefit which would flow to themselves, their families, and neighbors, were generously and admirably prompted to donate of their lands an equal acreage for the benefit of a meeting place for the members of a fraternal organization and a schoolhouse, where their children, as well as other children of the community might be educated, and at least attempted to convey the premises in question. If they did not successfully convey their property for lack of description, they did most assuredly donate and dedicate it to the high purposes expressed in the purported deed; and the property was so used for such purposes for approximately fifty years. All the evidence sustains this contention. When we apply the presumption stated in the Code, § 38-102, which is ofttimes overlooked in our hurried habits of administration of the law, that "Presumptive evidence consists of inferences drawn by human experience from the connection of cause and effect, and

observations of human conduct," we may easily infer that S. W. Fountain and J. C. Clack, with their own hands, or certainly under their direction, and with a portion of their substance, marked off the premises in dispute and constructed the house on and across the line, and that they and their children, as well as others of the community, enjoyed a common use of the property for nearly a half century. Under these circumstances, we think it would make no difference whether the purported deed failed for insufficient description. The agreement between themselves as individuals on the one hand, and between themselves and others as trustees on the other hand, shows the existence of an agreement to the effect that, in the event of a reversion, the premises and the house constructed thereon, would revert to them as tenants in common. This is an instance where conduct speaks equally as loud as words. If this were not so, what was to become of the house if the premises reverted? Could Clack, during his lifetime, have ousted Fountain, and could Fountain have ousted Clack, under this situation? We think not. The house that they built might have been of small value as an improvement, but suppose it had cost a much larger sum, under the facts of this case could one have ousted the other? Or what would have become of the house or building under such a situation? Would the law require that it be sawed in twain, or the possession of one be ousted in favor of the other? We think not. The law will consider them tenants in common and relegate them to the statutes governing the relation of tenants in common, that is, partition or equitable proceedings, or other appropriate methods. In *Hancock* v. *Tharpe,* 129 *Ga.* 812 (60 S. E. 168), a case somewhat analogous to the instant case, it is said: "Whether under the facts of this case the parties plaintiff and defendant were strictly and technically tenants in common, their rights in and relationship to the property in controversy were so closely analogous to the rights and relationship of tenants in common, in and to the property held in common, that the plaintiff was entitled to the same relief against the defendants as one cotenant would be entitled to against another cotenant who seeks to interfere unlawfully with the legitimate use and enjoyment of the common property."

It is true that where one tenant in common receives more than his share, he is liable to account to the other tenants for the surplus. Also: "There can be no adverse possession by one tenant

in common against his cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession. None of these things were shown in the present case." *Smith* v. *Smith,* 141 *Ga.* 629 (4), (9) (81 S. E. 895). And no such adverse possession was shown in the instant case. In *Logan* v. *Goodall,* 42 *Ga.* 95 (5), the court held: "One tenant in common may bring ejectment against his co-tenant, if the possession of the co-tenant be adverse; if a recovery is had, the plaintiff will be put in possession as a tenant in common, leaving to the parties the right, by writ of partition or by bill in equity, to settle any equities there may be between them as tenants in common." In *Smith* v. *King,* 50 *Ga.* 192 (3), the Supreme Court said: "When the title to land is in tenants in common, and their several interests have become complicated and cannot be definitely ascertained and set apart at law, equity will entertain jurisdiction to adjust by one decree the rights of all." Thus it will be seen that the law provides ample means for the protection of Davis.

■ Under the facts of this case, Davis was a successor in title, as to the house and the one-acre tract in question, of J. C. Clack, deceased, and received neither more nor less than the rights and estate owned by the heirs of J. C. Clack. It is interesting to note that the administrator of Clack treated the tract as an entity apart from the adjoining realty of his intestate.

■ When the evidence closed, after the trial judge had inquired of counsel what their contentions were concerning the issues to be submitted to the jury, he stated that he would submit to the jury only the question of what reasonable rental value C. J. Davis was entitled to receive from I. N. Fountain by reason of the possession and use of the premises, to the extent of Davis's share, since he purchased the interest of J. C. Clack, deceased, at the administrator's sale, this amount to be doubled. That was the only issue submitted to the jury, and they returned an amount which they determined Davis was entitled to receive as double rent for the use of his interest in the property possessed by Fountain since Davis acquired the interest of J. C. Clack, deceased. Judgment thereon was entered in favor of Davis against Fountain. It is contended by Fountain that the ruling of the court, refusing to submit the issue whether the relation of landlord and tenant existed, amounted to a direction of a verdict against him that the relation of landlord

and tenant did in effect exist, and he assigns that ruling as reversible error. We agree with him. The evidence demanded a finding that the relation between Fountain and Davis was that of tenants in common, and that there was no relation of landlord and tenant between them. Therefore, it follows that the verdict for double rent was contrary to law. As to the amount of rent due to Davis by Fountain, this is not before us for decision. If any amount be due, it is clear to our mind, and we so hold, that the summary writ of dispossessory warrant was not the proper remedy. The court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*