Colquitt & Baggs *vs.* Tarver.

COLQUITT & BAGGS, plaintiffs in error, *vs.* HARRIET M. TARVER, defendant in error.

Where property has been mortgaged, which is subject to the support of the mother of the mortgagors during her natural life, and proceedings are instituted to foreclose by the mortgagees, there is no good legal or equitable ground why the mortgages should not be foreclosed, as between the mortgagors and mortgagees, as such proceedings will not in any manner affect the right of the mother to her support out of the mortgaged property, provided the same is not sold under the judgment of foreclosure. (R.)

Where the first clause of a will contains the following provision : " First, my wife is to have the use of the house, furniture, carriages, horses, and everything necessary for her comfortable support, together with an ample and sufficient support out of and from said plantation, during her natural life or widowhood. But, should she marry again, then, in that event, she is to have the following negroes only, to-wit : Phil and his wife, Kittie, and all their children, Eliza, Bella, and her children, for and during her natural life ; and at her death the said negroes are to be equally divided between my children by my said wife—these negroes to be all and everything my wife is to have out of my estate, if she marries again." And the codicil to said will the following provision : " First, I revoke and annul so much of the first item of my will as gives a life-estate to my wife, Harriet, in and to the negroes Phil and his wife, Kittie, and their children and increase, Eliza and Bella, and in addition to those negroes, I give her Rosa, one of the children of Susan ; and I give my wife said negroes and their increase, forever in fee :"

*Held*, That the codicil does not adeem or revoke the first clause in the will which charges the estate with the support of testator's widow during her natural life or widowhood. (R.)

The record of the probate of the will was notice to the mortgagees that the property specified therein was charged with the support of testator' widow, but would not be notice as to other property purchased since the testator's death with the trust funds arising from the sale of the encumbered property. (R.)

Injunction.   Mortgage.   Construction of will.   Notice. Before Judge COLE.   Twiggs County.   At Chambers.   July 26th, 1872.

Harriet M. Tarver filed her bill containing substantially the following allegations :   That she is the widow of Hart-

well H. Tarver, who died on November 19th, 1851, leaving an estate of lands, negroes and personalty of the value of $500,000; that by the first item of her said husband's will, the use of the family residence, carriages, horses and everything necessary to her comfortable support, was given to her during her natural life or widowhood, and all the lands mentioned in said item were charged first with her support; that it was the purpose of her said husband by said will to provide her a liberal support, his estate being amply sufficient for that purpose, and to enable him, moreover, to make such provision for his children and other legatees as he desired; that complainant, since the death of her said husband, has devoted herself to her children and their interests; that she has given general attention to the affairs of the plantation; that from the time of her said husband's death to the emancipation of the slaves, she cultivated some twenty-five or thirty acres of ground belonging to said estate with negroes owned by her, from which she derived a yearly income of from $200 to $300; that, before the late war, she received annually from the estate about $1,000, a portion of which was spent in the support and maintenance of her two minor children; that during the late war her yearly allowance from said estate did not exceed $300, and since said war she has received a yearly allowance of about $400; that complainant does not regard these amounts as constituting a liberal support, as contemplated by her said husband's will; that the personal attention and services rendered to said estate by complainant are worth nearly, if not quite, as much as she has received from it for her yearly support; that the lands now remaining in the hands of the legatees under said will, charged with her support, consist of a considerable body of lands in said county of Twiggs, possessed at this time by her sons, William B. Tarver and Benjamin M. Tarver, who reside in said county, some of which lands belonged to her said husband at the time of his death, and the rest of which have been purchased with the proceeds of the sale of other proper-

Colquitt & Baggs *vs.* Tarver.

ty belonging to said estate; that all of said property is now encumbered by liens held by the firm of Colquitt & Baggs, of the county of Chatham, which liens were created by her said sons, and are as follows, to-wit: a mortgage lien, dated January 30th, 1871, on fifty-five head of mules and plantation utensils, besides the crop of 1871, to secure a note for $5,000, alleged to have been advanced by said Colquitt & Baggs; a mortgage lien, dated February 24th, 1871, on the plantations in said county of Twiggs, known as the "Green Jordan" place, the "Frederick" place, the "Mill" place, and a portion of the "Crittenden" place, to secure a note for $8,000; a mortgage lien dated February 24th, 1871, on the plantation known as the "Houston" place, the "Tarversville" or "Home" place, and the "Smith Mill" place, to secure a note for $7,000; that the lien first aforesaid has been nearly if not fully paid; that the mortgage last aforesaid was given to secure a note for fertilizers which proved to be utterly worthless; that said Colquitt & Baggs are proceeding to foreclose said mortgage liens, with a view to bringing said property to sale; that if this end is accomplished, complainant's right to the support provided for by said will, and contemplated by her said husband, will be wholly destroyed, and she will be left with no other means of livelihood save her own personal exertions; that the support intended by said will should not only be placed beyond contingency for the future, but complainant should be allowed for the past that which her said husband intended to provide, but which she has failed to obtain. Prayer that Colquitt & Baggs may be enjoined from foreclosing the mortgages until the further order of the Court; that the property aforesaid may be decreed to be charged with such sums of money as may be found due to complainant for her past and future support. Complainant waives discovery.

Defendants answered the bill substantially as follows: That they advanced the money as charged, and took said mortgages in ignorance of the rights of complainant, and without

any notice or knowledge thereof, applicable particularly to the after-acquired property. One of said firm answered additionally, that the mortgages were taken to secure these debts, after considerable correspondence on the subject, in the house of complainant, she being present when the instruments were being written, and a description of the property being given, she not objecting or disputing, though she must have known what was being done; that some of the letters written by defendants to William B. and Benjamin M. Tarver were in complainant's work-basket, in the room where the mortgages were being written, and must have been seen by her.

William B. Tarver filed his affidavit, that there was no written correspondence on the subject, and his mother had no notice of the mortgages, or of any intention to give them, previous to their execution.

Colquitt & Baggs further answered and pleaded, that while it might be true that, by the *first* item of said testator's will, a charge was intended on the property specified in *that item*, for the support of complainant, at least until her two sons, William B. and Benjamin M., arrived at age—now long past—or possibly to the end of her life, a proposition which can only be settled by reference to the original will, (the production of which they pray for that purpose,) yet they say, and so insist, that this provision in favor of complainant was adeemed and annulled, and the whole testamentary scheme of testator, as disclosed by said first item of will in respect to the property therein embraced, changed by the first item of a codicil to said will, afterwards made and published and admitted to record, wherein the said testator made a different disposition of said property wholly inconsistent with the disposition made thereof, in the first item of said will, and gave to complainant another and different provision out of a part of said property in favor of said complainant, in substitution of what was intended for complainant by said first item.

Colquitt & Baggs *vs.* Tarver.

The following is a copy of the parts of the will of Hartwell H. Tarver, and of the codicil thereto, applicable to the questions raised by this case :

" Item 1st. I give and devise my plantation at Tarversville, and on which I now reside, together with all the furniture, horses, carriages, mules, stock of every kind and description, together with all negroes on said plantation ; also, I give and bequeath all my lands, negroes, stock and farming utensils on all the lands, together with the lands owned by me in Twiggs county, except a plantation known as the ' Frederick place,' with the negroes and stock on it, which I give to my son, John H.; also, my plantation in Pulaski county, together with all the negroes, horses, mules, stock and farming utensils on said plantation; also, my ' Buzzard Roost plantation,' and all that is on it, I give and bequeath to my executors hereafter named, for the uses and trusts hereinafter designated.

" First—My wife is to have the use of the house, furniture, carriages, horses, and everything necessary for her comfortable support, together with an ample and sufficient support out of and from said plantation, during her natural life or widowhood. But should she marry again, then, and in that event, she is to have the following negroes only, to-wit: Phil and his wife, Kittie, and all their children ; Eliza, Bella and her children, for and during her natural life; and at her death, the said negroes are to be eqhally divided between my children by my said wife. These negroes to be all and everything my wife is to have out of my estate, if she marries again, and the balance of the products of my plantations herein described to be used and managed by my executors for the use and support of my children by my present wife, until they become of age, and for the payment of my just debts, which I direct to be paid out of the proceeds of my said plantations ; and when my children by my present wife arrive at age, all my property herein named, and all its increase, except the thirty negroes I have heretofore given to

the children of my wife by her former husband, and except, also, certain negroes I have hereby given to my daughter Dolly, and specifically named in the bequest to her; and except, also, Julia and her children, which I give to my son Paul E. Tarver; and also Jacob, which I give to my son Frederick; and also Willis, which I give to my son Henry; and also Henry, I give to my son John—all of which said last-named negroes belonged to the mother of my said first children; and as I have heretofore given to the children of my present wife by her first husband a large amount of property, and have also secured to my wife an ample competency, this is to be in lieu and place of her dower in and to all or any of my lands wheresoever situated.

"Item 2d. Devise to Paul E. Tarver.

"Item 3d. Devise to Henry A. Tarver.

"Item 4th. Devise to Frederick R. Tarver.

"Item 5th. Devise to John H. Tarver.

"Item 6th. Devise to Dolly E. Colquitt.

"Item 7th. Devise in reference to the place at Indian Springs, and all property in Butts county.

"Item 8th. As to payment of debts and certain specific legacies, and the division of the residue arising from sale of property therein named, among all his children.

"Item 9th. As to sale of stock in Merchants' Bank at Macon, and its equal division among all his children.

"Item 10th was as follows, to-wit: 'I hereby authorize and empower my executors, hereinafter named, to sell all or any portion of my property *I have given to my minor children*, if, in their judgment, the circumstances of the country should so require it; and if they should deem a sale indispensable, they are to consult the interest and feelings of my wife; and if she should not wish her interest sold, *then they are to reserve my residence in Twiggs county, and four hundred acres of land adjoining and contiguous thereto, and the negroes I have given her in the event of marriage, together with the furniture, horses, carriage and farming utensils, for her*

Colquitt & Baggs *vs.* Tarver.

*support during her life;* and if they should sell *the property given to my minor children, they* are to invest the proceeds in same proportions given to them by this my will: this power given to my executors to be exercised to the best interest of my wife and minor children, and not to be exercised unless, in their judgment, circumstances seem to require it. But if aggressions on the South continue, and they should deem it advisable, for the best interest of my minor children, then they are empowered and directed to sell said property in any manner they may see fit and proper."

CODICIL TO WILL.

"STATE OF GEORGIA—Twiggs County:

"Whereas, I, Hartwell H. Tarver, did, on the 12th day of October, 1850, sign, seal and publish my foregoing will and testament, in presence of Burwell Jordan, Robert R. Slappy and Carlton B. Cole, who signed said will as witnesses; and, whereas, I am desirous of changing certain devises and bequests, and also of disposing of other property since acquired by me, I do, therefore, make and publish this codicil as a part of my will:

"1st. I revoke and annul so much of the first item of my will as gives a life-estate to my wife, Harriet, in and to the negroes, Phil and his wife, Kitty, and their children and increase, Eliza and Bella; and in addition to those negroes, I give her Rosa, one of the children of Susan; and I give my said wife said negroes and their increase forever in fee. And I desire a further alteration in the first item of my will, in which I give all my negroes on my plantation in Twiggs (except the 'Frederick place),' as well as all my negroes on my 'Pulaski place,' to my youngest sons, William and Benjamin; and in lieu thereof, I desire that my executors should set apart ninety negroes, to and for each of my said children, William B. and Benjamin, together with the negroes I got by their mother, together with their increase. Said ninety negroes are to be taken from the place on which

I now reside and the 'Pulaski place' (excepting those negroes that I have or may specifically devise to others); and should there not be enough negroes on those two places to make up the ninety to each of said children, then I desire them to be taken from my 'Buzzard Roost' and 'Smith places,' jointly with the other two places. Said ninety negroes to each of said children are to be selected by my executors, in families, as near, as it can be done, so as to be equitable. I further desire this further alteration in the first item of my will, to-wit: I desire that my executors shall lay off one hundred acres of land out of my 'Tarversville place,' including the Lee houses and blacksmith shop, and making the house in which the post-office is now kept the front line, laying of said hundred acres in a square—which I give and bequeath to my sons, Frederick and John, for the purpose of erecting residences thereon, in future. I desire that the negroes, as well as the mules, cattle, etc., given to my daughter, Dolly E. Colquitt, during her natural life, in the sixth item of my will—that is, those on the 'Smith plantation'—shall remain there two years after my death; and I desire, further, that the property given my executors in trust for her, in said item, shall, in the event of her death, or in the event of the death of her child or children before marriage, or before arriving at the age of twenty-one, revert back, and be divided equally among my children, share and share alike. In the bequest to my son John, I give him a negro called Henry—his name is Miles, and I intended Miles instead of Henry; and in addition to what I give my son John, in my said will, I hereby give him ten negroes in addition thereunto, to be selected and set apart to him, by my executors, in families, so far as it can be equitably done, to be taken from my negroes not specifically given. I desire that my son, Frederick, have my body-servant, Tucker, and I hereby give Tucker to him, in addition to other bequests to him.

" In addition to the negroes disposed of by my will and codicil, I have about seventy not disposed of. I hereby give

to my son, Henry, six of said negroes, to be selected by my executors, in families, as far as it can be equitably done. I give, to my son John, Susan and her child, both on my Tarversville place. The balance of my negroes not disposed of, being about sixty-four in number, I desire to be kept on the place where they now are, for two years after my death, and that they and their increase be equally divided between my wife and all my children, share and share alike, to them forever, except a share that may fall or go to my daughter Dolly, which is to go to the trustees hereinbefore named for her, to be held by them in trust for her in the same manner as the property given her by my will.

"I desire my executors, two years after my death, to sell and dispose of my surplus stock of mules, horses and cattle, and everything else, retaining sufficient to keep up the plantation directed to be kept up by said will. I desire my executors also to sell all and any land that I may die possessed of, and not sold or given away by me. I also desire that my sons, Frederick and John, may remain and live at Tarversville, without cost or charge, till my youngest child becomes of age, if they desire to do so.

"It is further my will and desire that my four sons, Paul, Henry, Frederick and John, pay to my sons, William and Benjamin, as they may respectively become of age, the sum $2,500 each; and the said sum is hereby made a charge on the estate given by me in my will to my said four sons, Paul, Henry, Frederick and John."

Upon argument of the motion to dissolve the injunction issued in accordance with the prayer of the bill, the Court passed the following order:

"After argument had in the above stated case, it is ordered that said injunction be retained, and continued in the penal sum of $5,000, and that said Colquitt & Baggs are enjoined and restrained from proceeding to foreclose their said mortgages, so far as all the land set forth and mentioned in said bill is concerned, except the place or plantation mentioned in

said mortgage and bill, called and described as the 'Frederick place,' which said 'Frederick place' they are authorized to proceed against by foreclosure of their mortgages or other legal proceedings in their discretion, July 26th, 1872. This injunction and order also applies to and covers all the mules, farming utensils and other personal property set forth and mentioned in said mortgages and bill."

Plaintiffs in error excepted to said order and now assigns the same as error.

Lyon & Irvin; W. K. DeGraffenreid, for plaintiffs in error, submitted the following brief:

1st. The allegations in the bill are not sufficiently certain and explicit to entitle complainant to injunction and relief. See Dulin *vs.* Caldwell & Co., 28 Ga., 120; 22d, 4; Green Tracey & Co. *vs.* Ingram, 11 Ga., 171; Davenport *vs.* Alston, 14 Ga., 275; 1 Daniel Ch. Pr., 372, 273; Mitford, 126; Black *vs.* Black, 15 Ga., 449; Crawford *vs.* Ross, 39 Ga., 44; Jones *et al.* *vs.* Macon & Brunswick Railroad, 39 Ga., 139.

2d. A Court of equity will not lend its aid against a *bona fide* purchaser, and a mortgagee is such a purchaser: Behn & Foster *vs.* Young & Co., 21 Ga., 207; Rutherford *vs.* Billings, 29 Ga., 38; Calhoun *vs.* Tullas, 35 Ga., 119; Jones *vs.* Dougherty, 10 Ga., 273; Semmes *vs.* Moses *et al.*, 21 Ga., 439; Harrup *vs.* Winslett, 37 Ga., 655; Thrasher *vs.* Porter, 37 Ga., 392.

3d. A subsequent will or codicil revokes former will as to inconsistent dispositions: Nelson *vs.* Gifford, 3 Barbour, Ch. 158; 1 Jarman on Wills, 166—note-marginal, page 123, top page 196–7, marginal 160; 1 Williams on Executors, 129, 130; Larrabee *vs.* Williams, 28 Vt., 274; Barlow *vs.* Coffin, 24 Howard, 54.

4th. While it is true that the revocation extends only to the inconsistencies, yet it appears from a consideration of the whole will, that the testator had a general scheme by his will, which the change by the codicil defeats, then the revocation

Colquitt & Baggs *vs.* Tarver.

goes to the whole disposition : Harris *vs.* Clark, 3 Sedden N. Y., 242 ; Snowhill *vs.* Snowhill, 3 Zabris., 447 ; Atkins *vs.* Kron, 5 Iredell Eq., 217 ; Robinson *vs.* London Hospital, 21 Eng. Law and Eq., 371 ; *in re* Cooper's estate, 4 Barr, 88 ; Biddle *vs.* Caraway, 6 Jones' Eq., 95, 366 ; Purnell *vs.* Dudley, 4 Jones' Eq., 203 ; Marshall *vs.* Marshall, 11 Penn., 5 S. R., 430 ; Bradford's Will, Select Eq. cases, 163.

5th. There is no equity in the bill, because, if complainant is entitled, under the will, to this charge on the lands, the mortgagees are, notwithstanding, entitled to foreclose and sell as against the mortgagors, so as to get their interest out of the mortgaged property for the satisfaction of their debt; and the complainant's charge on the land will continue to follow it in the hands of the purchaser at the mortgage sale : Phillips *vs.* Humphries, 7 Iredell Eq., 206 ; Pickering *vs.* Pickering, 15 N. H., 281 ; Wallace *vs.* Wallace, 3 Foster, 182 ; Copp *vs.* Hersey, 11 Foster, 317 ; Clyde *vs.* Simpson, 4 Ohio, N. S., 445 ; Hunter *vs.* Stembridge, 12 Ga., 192.

6th. Ademption. See Swoope's Appeal, 27 Penn. State Rep., 58 ; 2 Williams' Exrs., 1132, *et passim.*

WHITTLE & GUSTIN; LANIER & ANDERSON, for defendant in error, submitted the following brief :

1st. The support of Mrs. Tarver was a charge upon the lands in Twiggs and Pulaski counties only, and it follows the lands in the hands of all parties : Code, section 2210.

2d. There is no revocation or ademption by the first item of the codicil. No new testamentary scheme appears from the codicil, and no intention to revoke, and the first item of the will is not inconsistent with it : Code, secs. 2420, 2427, 2435, 2438, 2439.

3d. Mrs. Tarver having accepted the legacy in lieu of dower, is a purchaser for valuable consideration. This being so, it places the support due her annually in the position of a debt, and her failure to collect it as it became due does not operate as a bar to its collection.

Colquitt & Baggs *vs.* Tarver.

4th. The will having been regularly admitted to probate and record was notice to everybody, especially to a firm, one of whose partners admits actual knowledge of the contents of the will.

5th. There is no evidence that Mrs. Tarver, by any act on her part, misled those parties as to the existence of this charge. Even if there were conflict on this, it is a matter for the Chancellor to decide on the motion for injunction, and for the jury on the final trial.

6th. The judgment upon foreclosure being a judgment *in rem*, would bind Mrs. Tarver: Code, sec. 3774.

WARNER, Chief Justice.

This is a bill filed by the complainant against the defendants, praying for an injunction to restrain the foreclosure and sale of certain described property which had been mortgaged to the defendants by William B. Tarver and Benjamin M. Tarver, the sons of complainant. The Court granted the injunction, to which the defendants excepted. The complainant alleges in her bill that she is the widow of H. H. Tarver, deceased; that by his will the property embraced in the mortgages, or a considerable portion thereof, was charged by the will of her late husband with her support and maintenance during her natural life or widowhood, in lieu of dower out of his real estate. The prayer of the bill is, that the amount to which she may be entitled for her support and maintenance shall be ascertained, and be first paid to her out of the mortgaged property, as constituting a prior lien or charge thereon.

There is no good legal or equitable ground shown by the complainant's bill why the mortgages should not be foreclosed, as between the mortgagors and mortgagees ; the foreclosure of the mortgages as to the debts due by the mortgagors to the mortgagees will not in any manner affect the complainant's rights to her support out of the mortgaged

Colquitt & Baggs *vs.* Tarver.

property, provided the same is not sold under the judgment of foreclosure; in that event, her rights might be complicated. In our judgment the codicil to the testator's will does not adeem or revoke the first clause in his will which charges his estate with the support and maintenance of the complainant during her natural life or widowhood, in lieu of dower, and she is entitled to have the amount ascertained and decreed to her, to which she may be entitled out of the mortgaged property which was owned by the testator at the time of his death, or which has since been purchased with the trust funds arising from the sale of the property charged with her support, with *notice* to the mortgagees, that it was so purchased with the trust funds arising from the sale of said property. The record of the probate of the will of the testator was notice to the mortgagees, that the property specified therein was charged with her support and maintenance, but would not be notice as to other property purchased since the testator's death with trust funds arising from the sale of the encumbered property. In view of the facts of this case, we shall direct that the injunction be so modified as to allow the mortgagees to foreclose their mortgages against the mortgagors, but restrain them from selling the mortgaged property described in the testator's will, and so much thereof as was purchased with the trust funds arising from the sale of the property charged with the complainant's support, if the complainant shall allege in her bill that the mortgagees had notice that it was so purchased with the trust funds at or before the date of their mortgages, excepting the "Frederick place," under their judgment of foreclosure, until the complainant shall first ascertain by a decree of the Court on the hearing of her bill, what amount she is entitled to for her support and maintenance out of the mortgaged property.

Let the judgment of the Court below be affirmed with instructions.