STEPHENSON *et al. vs.* EBERHART & SON *et al.*

Where a homestead was sold for reinvestment, under an order of the chancellor for that purpose, but the liens of creditors were not transferred to the property purchased, the purchaser of the homestead took it, as to lien creditors thereon against the original

debtor, with the same exemption therefrom, and for the same length of time, as was allowed to said original debtor before such sale.  Therefore, after the sale, a judgment creditor could not levy on and bring to sale the property, subject to the homestead charge or incumbrance, the object being to sell the reversionary interest in the hands of the purchaser before the termination of the homestead estate.

(a) This case differs from those of *Skinner vs. Moye,* 69 *Ga.* 476, and *City Bank of Macon vs. Smisson,* 73 *Ga.* 423.

March 31, 1887.

Homestead.  Liens.  Debtor and Creditor.  Reversions. Levy and Sale.  Exemptions.  Before Judge Lumpkin. Hart Superior Court.  September Term, 1886.

Reported in the decision.

Hodges & Van Duzer, for plaintiffs in error.

A. G. McCurry; J. T. Osborne; T. C. Carlton, for defendants.

Hall, Justice.

Under the 5th section of the act of the 16th of September, 1878, (acts, p. 100; code, §2025,) which is an act to carry into effect a certain section of the constitution of 1877, in relation to the sale and reinvestment of the proceeds of property set apart as a homestead, a sale of the property in controversy was ordered by the chancellor for reinvestment, and the plaintiffs in error became the purchasers at that sale.  By the provisions of that act, where the sale of the homestead is made in the manner therein prescribed, it operates to pass to the purchaser the "entire interest and title of the beneficiaries in the exempted property"; and also " the interest and title owned, before the exemption was made, by the party out of whose estate the property was so exempted "; and it provided that the purchaser shall receive the property and hold the same as to all liens thereon against the original debtor, with the

same exemption therefrom, and for the same length of time, as was allowed to said original debtor before such ·sale. This act further provides that, by consent of all the lien creditors, the liens of such creditors may be by such order divested and transferred to such newly acquired property.

The consent of the lien creditors to transfer their liens to the property purchased by the proceeds of the sale, and to divest them from the property for which this was substituted, was not obtained, but a creditor of the head of the family, after the property was sold to the purchasers under this decree made by the chancellor in conformity with the statute, proceeded to levy an execution upon the land thus purchased, subject to the homestead charge or incumbrance laid upon it. The object of this levy was to subject the interest in reversion, as it is styled, of the debtor in this homestead, in the hands of the purchaser, to the payment of the execution levied, while the homestead and exemption were still in full force and before there was a termination or removal of the homestead charge or incumbrance from the estate. It is not contended that, had the property with the homestead on it remained in the hands of the debtor's family, the remainder or reversionary interest of the owner could have been levied on before the termination of the homestead; and had it been, the contention would have been unavailing, as was decided by this court in the case of *Jolly vs. Lofton*, 61 *Ga.* 154.

Now, as by the express terms of the statute of 1878, this purchaser was substituted for the family of the debtor, with the provision in his favor that he should be exempted from interference by these judgment creditors, to the same extent and for the same length of time that the debtor and his family would be exempted, we think that this law is decisive of the point made and passed on in this case. Indeed, the language of this statute is so plain that it does not stand in need of interpretation. It construes itself, and exempts the property purchased, in the hands of the

vendee, from levy and sale, in the same manner and to the same extent it would have been so exempt had the sale never been made.

It is insisted, however, that according to the decision of this court in two cases (*Skinner vs. Moye*, 69 *Ga.* 476, and the *City Bank of Macon vs. Smisson*, 73 *Id.* 423), this case is taken out of the operation of this rule; but each of these cases is clearly distinguishable in its circum- stances from the one at bar. In the latter of these, the debtor and his family applied for the sale of this land, not for the purpose of reinvesting the proceeds of the sale in other property in the State of Georgia, but with a view of its removal out of the jurisdiction of the court to the State of Texas, where they purposed to make a similar invest- ment. This was treated as a deliberate abandonment and renunciation of the homestead, and a relinquishment of the rights of the beneficiaries to the same, and seems to have been regarded as effectually terminating their interests therein, as would the happening of other events, which, under the provisions of the law, free the estate from the charge put upon it, such as the death of the beneficiaries, or the attainment of majority by the minor children, or the marriage of the female children of the family and their de- parture from the paternal roof. Upon that ground, and that ground alone, this court held, that not only the reversion of the homestead, but the entire property on which it was laid, became subject to the payment of the debts of the head of the family. In the other case cited (*Skinner vs. Moye*), the sale was made in accordance with an act held to be unconstitutional, and was acquiesced in for a con- siderable length of time. It was not a sale made under the provisions either of this act or of the act of 1876, of which this is amendatory, or rather for which it was a sub- stitute.

It is needless to enlarge upon the reasons for preventing the interference by creditors with the property upon which a homestead is charged. Among others, it is evident that

the power to levy and sell the estate under execution could not be permitted without manifest injustice, both to the owner of the property and to his creditors, as the uncertainty of the duration of that homestead would so depreciate the value of the estate as would lead inevitably to its sacrifice. The contingencies which would contribute to this result are so numerous and so apparent that it would be a waste of time to attempt to specify them. But to confer power upon a purchaser at sheriff's sale, who might be alien in blood and affection to the family, and whose interests are personally in most cases opposed to theirs, to overlook and control the estate in which the homestead is taken and interfere with its use and management, thus annoying the family in various ways, would seem to be opposed directly to the idea of the framers of our constitution in ordaining the right, and to all of our legislation designed to carry into effect this constitutional provision, the plain object of which was to secure parents and their dependent offspring a home during the continuance of this charge or incumbrance upon the estate, without the disturbance or annoyance which would be occasioned by the enforcement of the demands of importunate creditors, and to extend to those who acquired rights in the estate, by a sale of the property, made in accordance with law, the enjoyment of the same rights and privileges which they had. There was error, therefore, in holding that the interest of the original owner in the property on which this homestead was placed, was subject to levy and sale during the continuance of the homestead, although the property had passed to a purchaser in accordance with the provisions of law for its sale and reinvestment.

Judgment reversed.