## HUNTRESS, guardian, *v.* ANDERSON.

1. A deed executed by the head of a family, purporting to convey land which had been, on August 31, 1877, set apart as a homestead under the constitution of 1868, while inoperative and ineffectual as to the homestead estate in existence when it was made, did pass to the grantee the "reversionary interest" of the grantor in the land described.
2. The decision to the contrary rendered by two Justices in *Love* v. *Anderson*, 89 *Ga.* 612, will not be followed.

Argued March 13, — Decided April 6, 1900.

Levy .and claim.   Before Judge Reese.   Taliaferro superior court.   February term, 1899.

*Anderson, Felder & Davis* and *W. O. Mitchell,* for plaintiff. *Horace & Carl Holden,* contra.

LUMPKIN, P. J.   This case was submitted to the trial judge upon an agreed statement of facts, in view of which its determination depended entirely upon the question of law dealt with in the headnote.   If the proposition there stated is sound, the decision excepted to was wrong.   The homestead under consideration was set apart under the ,constitution of 1868, which provided, in substance, that no court or ministerial officer should have authority to enforce against exempted property any execution or other process, so long as the homestead estate should continue to exist.   A similar provision appears in our present constitution.   This court, in view of this constitutional provision, held in *Jolly* v. *Lofton,* 61 *Ga.* 154, that, "pending the existence of a homestead, the reversionary interest of the person from whose property it was set apart is not subject to levy and sale."   The decision in that case has been frequently followed. In *Stephenson* v. *Eberhart,* 79 *Ga.* 119, 120, Hall, Justice, said : "It is needless to enlarge upon the reasons for preventing the interference by creditors with the property upon which a homestead is charged.   Among others, it is evident that the power to levy and sell the estate under execution could not be permitted without manifest injustice, both to the owner of the property and to his creditors, as the uncertainty of the duration of that homestead would so depreciate the value of the estate as would lead inevitably to its sacrifice."   There is, however, in the constitution of 1868, no restriction whatever upon the right or power of one in whose land a homestead has been set apart to sell his "reversionary interest" in the property.   In this respect that constitution differs from the constitution of 1877, which in distinct terms declares that a debtor who has had property exempted under its provisions shall not, after the homestead is set apart, "alienate or encumber the property so exempted, but it may be sold by the debtor and his wife, if any, jointly, with the sanction of the judge of the superior court of

the county where the debtor resides or the land is situated, the proceeds to be reinvested upon the same uses." Civil Code, § 5914. It would seem that at least one purpose of this provision in our present fundamental law was to prevent the head of a family from alienating his "reversionary interest" in the exempted property, in order that the right and privilege of a sale and reinvestment under judicial sanction might be preserved intact; for, manifestly, the same would be lost in a case where the head of a family had sold and conveyed to another that "reversionary interest." But, as above pointed out, there is nothing in the constitution of 1868 indicating such a policy. Why, then, could not a debtor who obtained a homestead under the provisions of that constitution, which did not provide for or contemplate a sale of the homestead property with a view to reinvestment, voluntarily sell, if he chose to do so, his "reversionary interest" in the exempted property? No reason occurs.to us why this could not be done; for, on principle, every man has a right to dispose of any interest he may have in property unless expressly by law restricted in the exercise of this privilege. If, therefore, we are not precluded by some previous decision of this court which is binding as authority, the question in hand should be determined accordingly.

Three decisions of this court were relied on by counsel for the defendant in error to support the proposition that a deed executed by the head of a family pending the continuance of the homestead estate and purporting to convey the property therein embraced is an absolute nullity, passing nothing to the grantee. The first is that of *Hall* v. *Matthews,* 68 *Ga.* 490. In that case case Hall, the head of a family, as an individual executed a deed purporting to convey the entire interest in land covered by a homestead. The grantees named in this deed brought against him in action of ejectment. All that this court really decided was, they could not recover possession, for the reason that to eject the head of the family pending the homestead estate would destroy the full enjoyment of the homestead by the beneficiaries thereof. It is true that in the headnote it is stated that the deed "carried no title to the purchaser;" and in the opinion Chief Justice Jackson remarked that the title did not pass out of the

head of the family, and that no recovery could be had against him individually. These expressions must, however, be understood in the light of the facts to which they related, and therefore the effect of the decision merely was that the conveyance executed by Hall was ineffectual to pass title to the homestead estate or in any manner interfere with the enjoyment of the same by the family of the grantor. In that case no question was made as to whether the deed would operate to pass Hall's "reversionary interest" in the land, nor did the court undertake to pass upon that point. See, in this connection, what was said as regards this case in *Towns* v. *Mathews,* 91 *Ga.* 549.

The next of the three decisions above mentioned is that rendered in *Hart* v. *Evans,* 80 *Ga.* 330, wherein it appeared that the head of a family, Evans, and his wife undertook by their joint deed, pending the continuance of the homestead, to convey absolutely a portion of the exempted land, they, however, remaining in possession of the same. Hart, a judgment creditor of Evans, caused the land described in this deed to be levied on, and the wife interposed a claim, which was sustained. The theory of the plaintiff in execution was that the effect of the deed executed by Evans and his wife was to terminate the homestead as to the land sought to be conveyed, thus rendering the same subject to levy and sale. Upon these facts this court held that this theory was erroneous; but, so far as relates to our present question, the decision went no further. In discussing the effect of that deed, Chief Justice Bleckley referred to it as a "nullity." But, as above remarked with reference to the case of *Hall* v. *Matthews,* this expression was doubtless intended merely to convey the idea that the deed of Evans and his wife was a nullity only in so far as its effect upon the homestead estate was concerned; for there was, in *Hart* v. *Evans,* no question raised as to the effect this deed might have in passing Evans's "reversionary interest" in the land.

The remaining one of the three decisions relied on by counsel for the defendant in error is that of *Love* v. *Anderson,* 89 *Ga.* 612. It was in that case definitely ruled that a deed executed by the head of a family pending the continuance of a homestead set apart under the constitution of 1868 was ineffectual to pass the

grantor's "reversionary interest" in the exempted property. Accordingly, if the decision last referred to were binding upon us as authority, it would constrain us to affirm the judgment now under review. That decision is not, however, to be treated as authoritative, for the reason that it was rendered by two Justices only; and if the views above presented are correct, the ruling in *Love* v. *Anderson* should not be followed. In a later case, that of *Blacker* v. *Dunlop, 93 Ga.* 819, where the homestead under consideration was one set apart in 1873, the present question was left open, this court declining to decide anything more than that a deed of this character could not be asserted against the homestead right so long as the homestead continued in existence.

The homestead with which we are now dealing was set apart, August 31, 1877, which was prior to the ratification of our present constitution. The act of 1876, "to amend the homestead laws of the State of Georgia," approved February 26 of that year (Acts of 1876, p. 48), was of force when this homestead was applied for. But the provisions of that act as to sales of homestead property for the purpose of reinvestment were permissive only, and there is nothing in the act restricting the right of the head of a family to dispose of his "reversionary interest" in the property so set apart. In this connection, it may further be observed that the paragraph of the present constitution which is now embraced in section 5920 of the Civil Code obviously has no bearing upon the case in hand. It merely declares that "Parties who have taken a homestead of realty under the constitution of 1868 shall have the right to sell said homestead and reinvest the same by order of the judge of the superior courts of this State."

<i>Judgment reversed. All the Justices concurring.</i>