## NATIONAL BANK OF ATHENS *v.* EXCHANGE BANK OF ATHENS.

1. Even before the passage of the act of November 22, 1899, " to provide for the more full and complete transfer of rent notes, mortgage notes," etc., the assignee of a promissory note secured by mortgage was, in equity, entitled to all the benefits of the security thus afforded, though there was no assignment to him of the mortgage itself.
2. In such a case the assignee of the note had the right to base upon the mortgage, although not foreclosed, an equitable claim to a fund in court arising from a sale of the mortgaged property under a lien of higher dignity, such fund being the balance left after satisfying that lien; and the fact that the payment of the note was further secured by an indorsement thereon was not, of itself alone, sufficient to subordinate a claim of this kind to that of a contesting claimant over which, in the absence of such additional security, it would, in equity, have been entitled to priority.

.3. The equitable claim of such a transferee to a fund realized in the manner above pointed out is superior to the claim of another, based upon the foreclosure of a junior mortgage which, together with the execution issued thereon, had been duly assigned to the latter.

.4. No right of the assignee of a promissory note with respect thereto can be injuriously affected by a declaration or admission made by the assignor after he had parted with title to the paper.

Argued March 14, — Decided May 16, 1900.

Money rule. Before Judge Russell. Clarke superior court. April term, 1899.

The property of the Princeton Manufacturing Company was sold under foreclosure of the first mortgage thereon, and, after paying the same, the sum of $2,033.86 remained in the sheriff's hands, for which a rule was brought against him by the National Bank of Athens, which claimed under another mortgage, with the execution issued upon its foreclosure, for an amount greater than the fund so remaining. The Exchange Bank of Athens had placed an unforeclosed mortgage in the sheriff's hands, claiming payment from this fund. Both of these mortgages had been filed for record at the same time, and were recorded on the same day. Each of them was executed by the Princeton Company to J. S. Cowles, and covered the same property. That of the National Bank was dated August 8, 1893, and recited that it was given to secure a note dated June 6, 1893, and due at sixty days. It was transferred by Cowles to the bank on May 31, 1895. That of the Exchange Bank was dated July 12, 1893, and recited that it was given to secure a note dated July 11, 1893, and due at sixty days. It was transferred on May 31, 1895, by Cowles to the bank, "to the full extent of their interest in note they hold against the Princeton Mnfg. Co., endorsed by Mrs. R. C. Hamilton, which they hold as collateral for note given by myself for $1,500.00, due June 12th, 1895." The president of the Exchange Bank testified, that this unforeclosed mortgage was turned over to the bank soon after it was made. Cowles borrowed some money from the bank, and as security delivered to the bank a note signed by the Princeton Company and endorsed by Mrs. R. C. Hamilton and himself. This note (which the unforeclosed mortgage purported to secure) was delivered to the bank before due.

Cowles' note was renewed from time to time, and there was still due on it $1,500, besides interest since June 12, 1895. On the day of sale the attorney for the Exchange Bank announced that the entire estate in the property would be sold, and that the mortgage would claim the fund.

It was admitted that the Princeton Company was insolvent. The Exchange Bank alleged that, if not allowed payment from the fund in court, it was without remedy. The National Bank denied that the fund in question was subject to pay any claim of the Exchange Bank, and alleged that the indebtedness represented by the note secured by the unforeclosed mortgage had been paid to Cowles before the mortgage was transferred by him to the bank. The following testimony of the cashier of the National Bank was offered; and its rejection is the basis of one of the assignments of error: "At various times J. S. Cowles told me that the mortgage under which the Exchange Bank now claims had been paid off. On the day I purchased the mortgage which I hold from J. S. Cowles, Cowles then stated that there was no other lien against the Princeton Manufacturing Company, except what the National Bank of Athens held; that all the others had been paid off. Based on this statement from Cowles, I purchased the mortgage from him, under which I now claim the money in court. This statement was made on the day the mortgage I claim was transferred to me, and at various times before that, by Cowles." Other assignments of error were, that the verdict, directed by the court in favor of the Exchange Bank, was contrary to law and evidence, etc. It was contended that, as this bank's mortgage was unforeclosed, and as it held presumably solvent collateral, there was no necessity for it to participate in the fund in court upon equitable principles.

*J. J. Strickland,* for plaintiff.    *T. S. Mell,* contra.

LUMPKIN, P. J. The controlling questions involved in this case are those indicated above.

1. Section 3684 of the Civil Code declares that: "The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security." The word "conveys" is of vital significance. The employment of it neces-

sarily makes this section mean that the transferee of a promissory note secured by mortgage is, without more, to have all the substantial benefits of the security thus afforded. The legislative intent that this result should follow the mere assignment of the note is so plainly and clearly expressed that it will not do for the courts to say it shall not follow unless there be also an assignment of the mortgage. Without such assignment the legal title to the mortgage remains in the mortgagee. Section 2822 of the Civil Code declares that "all liens provided for in this chapter may be assigned in writing and not otherwise." The "chapter" here indicated is chapter 8 under title 4. At the beginning of this chapter it is declared that "The following liens are established in this State," and the enumeration which follows includes "liens in favor of mortgagees.". See Civil Code, §2787. These two sections were originally codified from the lien act of 1873 (Acts 1873, pp. 42-47). In *Planters' Bank* v. *Prater,* 64 *Ga.* 612, Jackson, J., said, "mortgages are provided for in that act," and there are numerous decisions of this court to the effect that the legal title to a mortgage can not be passed otherwise than by a written assignment. It can not, however, be seriously doubted that, under the provisions of section 3684, the transferee of a promissory note secured by a mortgage, even without an assignment of the mortgage, is, with reference to obtaining the benefit of the security it affords, in as good a position to assert in equity a claim to the proceeds of the mortgaged property as he would occupy if the assignment had covered both the note and mortgage. To hold otherwise would render the section nugatory. While an assignee of a note who was not clothed with the legal title to a mortgage securing the same might not, by virtue of the law embraced in that section, be entitled to foreclose the mortgage in his own name, yet we see no reason why he could not, in equity, assert a claim based upon the ground that he was, by reason of having taken a transfer of the note, entitled to claim in an equitable proceeding the benefit of the security afforded by the mortgage. This case originated and was disposed of in the trial court prior to the passage of the act of 1899, referred to in the first headnote, and must, of course, be

decided here accordingly'; but it is worthy of note that this act made a broad and sweeping change in the law. Under its provisions, the transferee of a promissory note secured by a mortgage may, by virtue of the transfer of the note alone and without an assignment of the mortgage, foreclose it in his own name. See Acts of 1899, p. 90.

2. If the ' proposition laid down in the first headnote is sound, such a transferee has the same right to base upon the unforeclosed mortgage an equitable claim to a fund arising in the manner pointed out in the second headnote as the original mortgagee would have. We may, therefore, for our present purpose, deal with such a transferee as if he held the legal title to the mortgage. Indeed, it appears from the record of this case that the Exchange Bank, which was claiming under an unforeclosed mortgage, had acquired title thereto before coming into court and applying for the fund, but it did not get the assignment of the mortgage when it took the transfer of the note, and its rights, under the facts' appearing, depend upon how far that transfer operated to invest it with the benefit of the security. This court, in *Sims* v. *Kidd,* 55 *Ga.* 626, decided that the holder of an unforeclosed mortgage might base upon it an equitable claim to a surplus in court realized from the sale of the mortgaged property, if the mortgagor was insolvent; and that, in such a case, the mortgagee would be entitled to the fund if his equity thereto 'was superior to that of another claiming the money. In *Baker* v. *Gladden,* 72 *Ga.* 469, it was held that " The holder of an unforeclosed mortgage can not claim at law the balance of a fund arising from the sale of the property covered by the mortgage, after paying the judgment under which it was sold, and which was older than the mortgage, but he can make such a claim in equity, and this could be done on a money rule, with proper allegations, showing the insolvency of the debtor and that the mortgage creditor would be without remedy unless such fund were awarded to him. " The rule thus announced was applied as follows: " Certain property having been sold under a judgment, which was the oldest lien thereon, after satisfying it the balance of he money arising from the sale should have been paid to an

unforeclosed mortgage, in preference to junior judgments, under proper pleadings to claim it." Again in *Ennis* v. *Harralson,* 101 *Ga.* 282, this court strongly intimated that the holder of an unforeclosed mortgage might claim the proceeds of the sale of the mortgaged property if he showed equitable reasons entitling him to do so, among which it would be necessary for him to show that the mortgagor was insolvent. The principle established seems to be that money in court may be claimed upon an unforeclosed mortgage, when the holder has a superior equitable right to the fund and is otherwise without remedy. It was earnestly insisted in the argument here that such a mortgagee is not remediless if the note secured by the mortgage is further secured by the indorsement of a solvent person other than the mortgagor. We can not assent to the correctness of this proposition. If, in a contest between a mortgage holder and another creditor of the mortgagor, such holder is, relatively to the proceeds of the property of the common debtor, without remedy except by a resort to the mortgage lien, this is enough to enable him to prevail, provided, as between the two claimants, viewed solely with reference to such proceeds, he has the superior equity. We have not overlooked the equitable rule that a creditor holding two liens, the enforcement of either of which would result in the satisfaction of his claim, may, at the instance of another creditor of the same debtor, be compelled to make his money out of the property covered by one of the liens, when he will not thereby be injured and when this is essential to the protection of the other creditor. This rule, however, applies only where the two securities held by the creditor first mentioned both cover property of the common debtor. It can not be so extended as to force a creditor who, besides holding a lien on property of such debtor, is further secured by an indorsement made by a third person, to abandon his lien and look to the other security in order that another creditor may realize upon his claim. This is so because, if the indorser should be compelled to pay the debt, he would, in equity, become immediately subrogated to all of the rights of the creditor whose claim he satisfied.

3. The principle announced in the third headnote is fully

sustained by the decision in *Baker* v. *Gladden,* supra, and the reasoning of Mr. Justice Blandford in support of the same.

4. The fourth headnote rests upon the familiar rule, that one who sells property to another can not thereafter, by any admission or declaration, prejudicially affect the purchaser's rights in the premises. Accordingly, when the holder of a promissory note sells and transfers it to another, the seller can not thereafter defeat the purchaser's right to collect it by falsely representing to a third person that the note had been paid. The person to whom such a representation is made in acting upon it does so at his peril. If, in subsequent litigation between himself and the assignee of the note, it becomes essential to establish as matter of fact that the note was paid, the third person is, of course, at liberty to do so by competent.evidence; but he will not be permitted, in attempting to establish such fact, to put in evidence against the transferee the mere sayings or declarations of his vendor made after the latter had parted with all title to and interest in the note.

*Judgment affirmed. All concurring, except Fish, J., absent.*