## MOUGHON, administrator, *v.* MASTERSON.

1. In 1875 a mortgage was given by a man and his wife upon certain land belonging to him, which had been set apart as a homestead under the constitution of 1868. A proceeding to foreclose it was begun in 1876. The husband and wife interposed pleas, setting up the existence of the homestead, and that the debt was not such as could subject it. This court held that such a plea was not demurrable. The proceeding was dismissed. In 1900 the husband died; and in 1908 the wife died, thus terminating the homestead right. In 1910 a son of the mortgagee filed a petition against the administrator of the husband, alleging, that the administrator had sold the land, and the lien of the mortgage had been transferred to the fund; that the mortgagee died leaving a solvent estate and only two heirs; that the plaintiff was appointed administrator, and administered the estate; that the sister of the plaintiff, who was the other heir, died intestate, leaving her husband as her sole heir, and he took possession of her estate without administration; that the plaintiff settled with him in full as to her interest in the estate of the mortgagee, and took an assignment from him of all interest he might have in any claim or debt due to the mortgagee's estate; and that the plaintiff was discharged as administrator. He alleged that he had both the legal and equitable title to the mortgage; and he prayed a decree setting up his lien, determining the amount thereof, for judgment against the administrator, and for general relief. *Held*, that the petition was not demurrable on the ground that it was not brought by an administrator of the mortgagee, or on the ground that a personal representative of the deceased sister of the plaintiff was a necessary party, or that the husband of the deceased sister should have been joined as a party plaintiff.

(a) The mortgage was not merely upon the homestead right or "estate," but on the land; and the original proceeding to foreclose it was also against the land.

2. Special demurrers, based on the ground that no copy of the mortgage or of the record in the former litigation was attached to the petition, were sufficiently met by amendment.

3. Under the facts stated in the first headnote, the present proceeding was not demurrable on the ground that it was barred by the statute of limitations.

4. Under such facts the plaintiff could proceed to assert his equitable right to have the mortgage paid out of the proceeds of the administrator's sale.

(a) He would not be entitled to a judgment or decree in excess of such proceeds, and his claim would be subject to proper defenses:

5. The other grounds of the demurrer were without merit.

(a) Under the special facts of this case, as alleged by the plaintiff, he could proceed for the purpose of having the mortgage held by him satisfied from the proceeds of the sale of the mortgaged land which had been sold at administrator's sale by the administrator of the mortgagor; and it was not necessary to have a second administration upon the estate of the mortgagee.

OCTOBER 14, 1913.

Equitable petition. Before Judge James B. Park. Jones superior court. October 24, 1912.

*Hardeman, Jones, Park & Johnston,* for plaintiff in error.
*Samuel H. Sibley* and *Johnson & Johnson,* contra.

LUMPKIN, J. 1. The main facts are stated in the first headnote. Other facts will be stated as necessary. The mortgage given by William S. Moughon and Alice K. Moughon to Clement Masterson in 1875 was upon the land which had been set apart as a homestead, and not merely upon the "homestead estate." The proceeding to foreclose it was also against the land. The grounds of the demurrer in the present case, based on the theory that the mortgage and the foreclosure proceeding were confined to something less than the land itself, are without merit. The petition alleged, that the mortgage was given to Clement Masterson; that he died leaving a solvent estate and only two heirs, the present plaintiff and his sister; that the plaintiff was appointed administrator, and administered the estate; that his sister died intestate, leaving her husband as her sole heir at law, and the husband took possession of her estate without administration; that the plaintiff settled with him in full as to the estate and took an assignment from him of all interest he might have in any claim or debt due to the mortgagee's estate, including that now involved; and that

the plaintiff was discharged as administrator. Under these allegations, the petition was not demurrable on the ground that an administrator of the mortgagee was the proper party to bring the action, or that a personal representative of the plaintiff's sister was a necessary party, or that the husband of the sister as an individual should have been joined as a party plaintiff.

2. The special demurrers, based on the ground that certain exhibits should have been attached, were met by amendment.

3. In 1876 proceedings were begun to foreclose the mortgage on the land. Moughon and his wife both filed pleas, setting up, among other things, that the mortgaged property had been set apart as a homestead before the mortgage was given. The plea of the wife expressly negatived the fact that the mortgage was given for any of the objects for which the "homestead estate" could be encumbered. The presiding judge struck these pleas, and granted a rule absolute foreclosing the mortgage. Exception was taken, and the case was brought to this court. Here the judgment was reversed. *Moughon* v. *Masterson,* 59 *Ga.* 835. Bleckley, J., delivering the opinion, said, that, assuming the plea of the wife to be true, the mortgage could not be enforced against the property while the homestead right was in existence; that it might be that it could be so enforced after the homestead right had terminated; but that if so, it was because the mortgage bound whatever was beyond the "homestead estate" proper. He then added: "Whether it does so or not need not now be decided. Granting that it does, the choice would lie between rendering a judgment of foreclosure now, with a stay of sale until the homestead right is extinct (45 *Ga.* 631), and postponing foreclosure, as well as sale, until after the happening of that contingency. At all events, if the matter of the wife's plea is supported by evidence at the trial, the mortgage can not be foreclosed against the homestead estate, either now or hereafter. It was error to strike the plea."

It will be seen that this decision intimates (what we now hold) that the proceeding was against the land itself, in which the homestead had been granted, and that the effort to foreclose was against the property, including what is sometimes spoken of as a homestead estate or right therein, as well as the reversionary interest, these words being used for want of better descriptive terms,

though not strictly accurate. The decision held that a plea which sought to prevent a foreclosure so as to interfere with the homestead right, or, as it was called, a foreclosure against the homestead estate, was good, and that a foreclosure could not take place so as to interfere with the homestead right or "estate." What, then, was to be the result of such a plea, if sustained? Judge Bleckley clearly indicated that it might be one of two things,— either to allow a foreclosure, with a provision staying the sale until the homestead right should become extinct, or a postponement of the foreclosure, as well as the sale, until after the happening of that contingency. When the case was returned to the court below, the plaintiff acted upon this statement, and dismissed the proceedings, recognizing the existence of the homestead, and awaiting its termination before commencing the foreclosure.

It was contended by counsel for the plaintiff in error that the statement above mentioned was obiter dictum; that the mortgagee was compelled to foreclose his mortgage at least within twenty years from the time when the debt became due, or the foreclosure would be barred by the statute of limitations; and that this foreclosure must be had although the homestead right still continued. In other words, the contention was that the mortgagee was compelled to proceed with the foreclosure pending the existence of the homestead, though he could not sell the property until after the termination thereof. Under the decision above cited, we do not think that this result follows. A mortgage foreclosure is different from a judgment in an ordinary suit, in this: in the latter the lien is created by the judgment; in the former it is created by the contract. Where suit is brought for a breach of contract or for a tort, and judgment is recovered, it creates a lien upon the leviable property of the defendant, and the execution requires the sum to be made of his real or personal estate. It can be prevented from becoming dormant by entries of nulla bona, and proper entries on the docket; and the levying officer may make such entry notwithstanding the existence of property in which a homestead is taken, because it would not be subject to seizure and sale under the execution. But a judgment of foreclosure of a mortgage is quite different from an ordinary judgment. It is not a general judgment in personam, and binds only the mortgaged property. It is a judgment to enforce a specific lien, created by

agreement of the parties. "It is not alone a judgment as to the amount due on the mortgage, but it is also a judgment that the property mortgaged shall be sold to pay the sum adjudged to be due. The statute authorizes, indeed requires, the judgment to go to that extent." *Wallace* v. *Holly,* 13 *Ga.* 389, 393 (58 Am. D. 518). Of what avail would it be to obtain such a judgment, directing the seizure and sale only of the mortgaged property, when the mandate could not be obeyed during the continuance of the homestead right? The plaintiff could not well have an entry of nulla bona made thereon, because the judgment itself is a command to seize and sell certain property. The mortgagee has as much lien on the property before foreclosure as he has afterward; and requiring the mortgagee to obtain a judgment directing a levy and sale of the specific property, which the law would not permit to be enforced pending the homestead, would seem, during that time, to be a legal demand for a brutum fulmen.

It must be borne in mind that this homestead was granted under the constitution of 1868, and the mortgage was given upon the land in 1875. Accordingly its validity is to be tested by the provisions of that constitution, and not by those of the constitution of 1877. *Huntress* v. *Anderson,* 110 *Ga.* 427 (35 S. E. 671, 78 Am. St. R. 105); *Waters* v. *Waters,* 124 *Ga.* 349 (52 S. E. 425). Under the ruling in the case in 59 *Ga. Rep.,* above cited, we are satisfied that the mortgagee was not compelled to proceed with a foreclosure of the mortgage pending the existence of the homestead, on pain of having such foreclosure barred by the statute of limitations if not commenced within twenty years from the date when the debt fell due. Suit on the note to obtain a judgment in personam may have been barred by the statute of limitations, but a foreclosure of the mortgage was not. It was alleged that the homestead terminated in 1908; and the present proceeding was commenced in 1910.

4. It was further alleged that Moughon, the owner of the land, died in 1900; that in 1909, after the termination of the homestead by the death of his wife, an administrator was appointed on his estate; and that the land had been sold at administrator's sale, and the lien of the mortgage was thus transferred to the proceeds. The plaintiff sought to have the mortgage paid from such proceeds. Under the allegations, we see no legal objection to this.

Civil Code (1910), § 4029; *Newsom* v. *Carlton,* 59 *Ga.* 516. Although the mortgage was not foreclosed, the mortgagee could, by proper proceedings, claim the fund arising from the sale of the property by the administrator. *National Bank* v. *Exchange Bank,* 110 *Ga.* 692 (36 S. E. 265). He could not obtain a general judgment de bonis decedentis, but he could claim that the fund arising from the property, or so much thereof as might be necessary, should be applied to the payment of the mortgage, subject, of course, to have legitimate defenses raised as to the legality and priority of the mortgage lien, or the amount due thereon.

5. It was contended, that the title to personal property of a decedent vests in his administrator, and not in his heirs; that both of the heirs of Masterson could not have brought an action to foreclose the mortgage; and that the alleged assignment from the husband of the deceased heir to the plaintiff (the other heir) could not confer on the latter any power to bring such a suit. It is true that the title to personalty of an intestate vests in his administrator for the purposes of administration, and he is the proper person to bring a suit upon a chose in action which belonged to the decedent. In some States it has been held, that, where there are no debts of the intestate and no administration, the heirs may bring suit upon such a chose in action; and it is held by a number of courts that this can be done at least in equity. In this State it has been held, that, although there may be no debts and no administration, an heir at law of an intestate can not maintain an action for the recovery of personalty which belonged to the decedent and which during his lifetime was wrongfully converted by another to his own use. *Smith* v. *Turner,* 112 *Ga.* 533 (37 S. E. 705). In *Juhan* v. *Juhan,* 104 *Ga.* 253 (30 S. E. 779), there was an intimation that perhaps, if there were no debts against an estate and no necessity appeared for an administration, and all the heirs were sui juris, they could, by agreement among themselves, take charge of the estate and collect and distribute among themselves its assets. But the same Justice who made that intimation wrote the opinion in *Smith* v. *Turner,* supra. See also *Worthy* v. *Johnson,* 8 *Ga.* 236 (52 Am. D. 399); *Murphy* v. *Pound,* 12 *Ga.* 278; *Morgan* v. *Woods,* 69 *Ga.* 599; *Carr* v. *Berry,* 116 *Ga.* 372 (42 S. E. 726); *Allen* v. *Hurst,* 120 *Ga.* 763, 765 (48 S. E. 341); *Hill* v. *Maffett,* 3 *Ga. App.* 89 (59 S. E. 325). An examina-

tion of those decisions will show that they are not unsupported by reason. If the heirs of a decedent should bring suit against one who was his debtor, alleging that there were no debts of the estate and no need for administration, the defendant would frequently have no means of knowing whether there were such debts or not, or of combatting such allegations. If the heirs should recover against him, and subsequently it should appear that there were in fact creditors, and an administrator should be appointed and bring suit against the same defendant, the former judgment would be no protection to him, so far as the rights of creditors were concerned; while a judgment for or against him in a suit by the legal representative of the estate would be conclusive upon heirs and creditors.

It has further been declared by this court, that, without some special reason, a suit in equity can not be maintained by a creditor, distributee, or legatee, for the recovery of personal property of a decedent from a third person; and that the fact that the decedent had been dead for more than fifteen years, and that there had been no administration upon his estate, did not furnish a sufficient ground for equitable interposition. *Mason* v. *Atlanta Fire Co.,* 70 *Ga.* 604 (48 Am. R. 585). On the other hand, there are cases in which it has been held that equity would be authorized to grant relief. Without undertaking to give an exhaustive statement of the special circumstances which will authorize such a proceeding, they may be illustrated by cases where there is on the part of the administrator collusion, insolvency, unwillingness to collect the assets, or other like peculiar circumstance. The title to real estate descends to the heirs, and their right to sue in regard to it stands upon a different basis, where there is no administration. It has also been held that where a conveyance, which included both real estate and personalty, was procured by fraud from one who afterward died, and there was no administration and no need of any, the heirs might bring an equitable action to set it aside, proper indemnifying bond being required as to the personalty, if deemed necessary. *Kent* v. *Davis,* 89 *Ga.* 151 (15 S. E. 457). In *Eagan* v. *Conway,* 115 *Ga.* 130 (41 S. E. 493), a similar case, it was said that equity, having taken jurisdiction for the purpose of cancelling the conveyance as to the realty, would retain it as to the entire controversy. *Belt* v. *Lazenby,* 126 *Ga.* 768 (56 S. E. 81). In

*Drummond* v. *Hardaway,* 21 *Ga.* 433 (*Hardaway* v. *Drummond,* 27 *Ga.* 221, 73 Am. D. 730), it was broadly stated that the heirs were entitled to recover, there being no debts; but the facts show that fraud and collusion, in which the administrator took part, were alleged, and also that the administrator was beyond the jurisdiction of the court. On the facts there involved, it is reconcilable with other cases.

In the case before us it was alleged, in substance, that the plaintiff was appointed administrator of his father's estate, and fully administered it; that he and his sister were the sole heirs; that she died intestate, leaving no debts and no heir except her husband; that he took charge of her estate without administration (Civil Code (1910), § 3930); that he settled with the plaintiff as to the estate of the plaintiff's intestate, and made an assignment to the plaintiff of all claims or debts due to the mortgagee's estate, including the mortgage, as a portion of plaintiff's share of the estate; and that the plaintiff was thereafter dismissed as administrator in 1894. If these allegations be true, in effect the administrator fully administered the estate and delivered to. the present plaintiff this claim as a part of his interest in the estate, and the only other person who might have an interest therein relinquished it to him. The administrator did not assign the claim in writing, so as to convey a perfect legal title; but the plaintiff obtained a perfect equitable title. If a new administrator should be appointed, under such circumstances, no doubt he could be compelled to complete the plaintiff's title by making a written assignment. We do not think it is necessary to have an administrator appointed in such a case merely in order to make a written assignment or to bring suit for the use of the plaintiff. The facts alleged present such a peculiar case as authorizes the plaintiff to assert his equitable rights in a proper proceeding; and in the present action he alleges that he has both a legal and an equitable title, and prays that it be enforced, and that he be paid from the fund arising from a sale of the land, and for general relief.

There was no allegation as to how much the land brought at the sale by the administrator of the mortgagor; but no point was raised on this by the demurrer.

6. The other grounds of the demurrer are not such as to require a reversal. There was no error in overruling the demurrer.

*Judgment affirmed. All the Justices concur.*